**Sidney J. UNGAR, Plaintiff-Appellant,**

v.

**Joseph MANDELL, Defendant-Appellee.**

No. 149, Docket 72–1590.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 1972.

Decided Dec. 6, 1972.

**1164**

Morton Liftin, Washington, D. C., for plaintiff-appellant.

Emanuel Thebner, New York City, for defendant-appellee.

Before FRIENDLY, Chief Judge, and MANSFIELD and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

In this diversity suit for breach of an alleged agreement for the settlement of a number of lawsuits in the Supreme Court of the State of New York Sidney J. Ungar appeals from an order of the district court denying a preliminary injunction restraining defendants from further prosecution of the state court actions or enforcement of any judgment therein and from a judgment dismissing the present suit as against Mandell on grounds of comity. We affirm the denial of injunctive relief, reverse the dismissal of the complaint and remand the case to the district court for findings and conclusions on the question of whether appellant is collaterally estopped from prosecution of this suit.

Ungar and one Nahim Isaias have been adversary parties in multiple state court litigation in the Supreme Court, New York County, wherein Isaias has been awarded a judgment foreclosing mortgages held by him on New York real estate owned by Ungar.[1] In a separate state court action Mandell, Isaias' attorney in the state court litigation, sued Ungar for libel and slander. The foreclosure actions have been the subject of extensive litigation, including decisions by the New York Supreme Court for New York and Columbia Counties, the Appellate Division, First and Third Departments, the New York Court of Appeals, and the United States Supreme Court, which denied Ungar's petition for a writ of certiorari seeking review of the state court's denial of a writ of prohibition and of a hearing upon the existence of an agreement to settle.[2] In the

---

1. Although S. J. Ungar Realty Affiliates, Inc. is named as a party in some of the state court actions, it is controlled by Ungar who owns all or the majority of its issued shares.

2. E. g., Isaias v. Fischoff, 37 A.D.2d 702, 322 N.Y.S.2d 967 (1st Dept.1971) ; Isaias v. Fischoff, 37 A.D.2d 934, 326 N.Y. S.2d 291 (1st Dept.1971) ; Isaias v. Fischoff, 39 A.D.2d 850, 332 N.Y.S.2d 976 (1st Dept.1972) ; Ungar v. Leff, 37 A.D.2d 934, 326 N.Y.S.2d 292 (1st Dept. 1971) ; Isaias v. Ungar, 38 A.D.2d 700, 328 N.Y.S.2d 813 (1st Dept.), cert. denied, 406 U.S. 946, 92 S.Ct. 2046, 32 L. Ed.2d 333 (1972) ; Ungar v. Leff, 37

course of the state court litigation Ungar asserted that the parties had entered into a stipulation settling all of the state court suits. However, a judgment of foreclosure and sale was later entered by the New York State Supreme Court, affirmed by the Appellate Division, 39 A.D.2d 850, 332 N.Y.S.2d 976 (1st Dept. 1972), and a stay has been denied by the New York Court of Appeals (N.Y.L.J. July 11, 1972, No. 524).

While the state court claims were being pursued in seemingly endless proceedings attended by numerous motions by Ungar in the trial court, a series of interlocutory appeals, corollary applications by Ungar for writs of prohibition and mandamus, and by his institution of a separate action in Columbia County, New York, in an unsuccessful attempt to stay the New York County proceeding, Ungar, on January 4, 1972, commenced the present diversity suit in the district court against Isaias and Mandell. His federal complaint claims breach of the agreement allegedly entered into with them on April 28, 1971, for settlement of the state court litigation and seeks specific performance of that agreement or, in the alternative, damages and an injunction against the defendants' further prosecution of the state court actions. Simultaneously Ungar moved for a preliminary injunction restraining defendants from proceeding with foreclosure and sale of the property that was the subject of the state court foreclosure proceedings. Mandell's answer [3] denies the existence of the alleged settlement agreement and asserts a series of affirmative defenses, including collateral estoppel, *res judicata,* abuse of process and unclean hands, failure to state a claim on which relief might be granted, lack of jurisdiction over the subject matter, and unwarranted interference from the federal proceeding with the state court's judicial process.

Judge MacMahon denied Ungar's application for injunctive relief on the ground that it was barred by the federal statute prohibiting a stay of state court proceedings, 28 U.S.C. § 2283, and dismissed the action as against Mandell on the ground that comity required the district court to abstain, since prosecution of the federal action would have the effect of interfering with the state court proceedings and no justification for such interference was shown.

■■ We agree that denial of injunctive relief was required by § 2283 which prohibits such relief except where expressly authorized by federal statute, or where necessary in aid of the federal court's jurisdiction or to protect or effectuate its judgment. None of these exceptions is applicable here. The fact that Ungar's application was nominally directed against Mandell and Isaias rather than against officials of the state court did not remove his suit from the statutory bar. See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 447 (1940).

■■ Turning to the district court's dismissal of the action against Mandell, Ungar's suit appears to be a glaring example of the waste, duplication and vexatiousness that can be perpetrated through utilization of available diversity jurisdiction during the pendency of state court litigation in which identical issues are or can be raised. The federal suit apparently serves no purpose other than to attempt to sidestep the consequences of the state court litigation by seeking federal adjudication of issues that either have been or could have been resolved in the state court. Sympathetic as we are to the district court's desire to avoid

---

A.D.2d 765, 324 N.Y.S.2d 747 (1st Dept.), appeal dismissed, 29 N.Y.2d 724, 326 N.Y.S.2d 385, 276 N.E.2d 224 (1971), cert. denied, 406 U.S. 946, 92 S.Ct. 2046, 32 L.Ed.2d 333 (1972). See also Ungar

v. Isaias, 336 F.Supp. 1233 (S.D.N.Y. 1972) (Weinfeld, J.).

3. Since Isaias was not served until after the motion for preliminary injunctive relief, he is not a party to this appeal.

abuse of its jurisdiction at a time when its dockets are heavily overburdened, however, the dismissal cannot be sustained on the grounds asserted by it. It is settled that a federal court's power to abstain from exercise of its jurisdiction is limited to narrow and exceptional circumstances, none of which are found here. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed. 2d 1163 (1959); Meredith v. Winter Haven, 320 U.S. 228, 235–236, 64 S.Ct. 7, 88 L.Ed. 9 (1943); see also Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959) (federal court should decline to pass upon the constitutionality of a state statute susceptible of a construction by state court that will avoid or modify the constitutional question); Alabama Public Service Comm'n v. Southern Ry. Co., 341 U.S. 341, 71 S. Ct. 762, 95 L.Ed. 1002 (1951) (abstention permitted where federal court may disrupt complex state administrative processes); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (abstention proper to avoid forecast of state law by federal court).

Although the district court may in an appropriate case stay prosecution of a federal suit pending resolution of the issues by a state court, Klein v. Walston & Co., Inc., 432 F.2d 936 (2d Cir. 1970), the state court litigation has now been concluded, thus eliminating the necessity for such a stay which would be granted primarily to avoid duplication of effort. We are confronted with a complaint which asserts an *in personam* claim for damages over which the district court has diversity jurisdiction. Even if a *stay* were proper, which is not the case here, *jurisdiction* may not be declined on the ground that the state court has had concurrent jurisdiction in any event. See Kline v. Burke Constr. Co., 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,

398 U.S. 281, 295, 90 S.Ct. 1739, 26 L. Ed.2d 234 (1970); Mandeville v. Canterbury, 318 U.S. 47, 49, 63 S.Ct. 472, 87 L.Ed. 605 (1943); Ferguson v. Tabah, 288 F.2d 665, 672 (2d Cir. 1961); Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 19–20 (2d Cir. 1962).

██ If the state court judgment was based upon a finding that the alleged agreement forming the basis of Ungar's federal suit did not exist, the latter action could be dismissed on the ground of collateral estoppel. Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L. Ed.2d 469 (1970); Neaderland v. Commissioner, 424 F.2d 639 (2d Cir.), cert. denied, 400 U.S. 827, 91 S.Ct. 53, 27 L. Ed.2d 56 (1970); Vernitron Corporation v. Benjamin, 440 F.2d 105, 108 (2d Cir.), cert. denied, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971); Restatement, Judgments, ch. 3, § 68(1) (1942). Although Mandell's answer pleads collateral estoppel as an affirmative defense and he here urges it, in the alternative, as a basis for affirming dismissal of the action, the district court did not address itself to that issue. Furthermore, we are unable, on the basis of the limited portion of the record of the state court proceedings that has been made available to us, to determine whether the existence of the alleged agreement was litigated and was essential to that court's final adjudication.

Excerpts from the state court record reveal that on May 6, 1971, Justice Sidney A. Fine of the Supreme Court, New York County, concluded in the foreclosure suit entitled Isaias v. Ungar, et al., that on April 28, 1971, the parties had entered into a stipulation of settlement. Over Isaias' objection he entered an order accordingly, enforcement of which was stayed pending appeal by Isaias. On July 1, 1971, that order was reversed by the Appellate Division, First Department, on the ground that the procedure adopted by the trial judge has been improper. Isaias v. Fischoff, 37 A.D.2d

702, 322 N.Y.S.2d 967 (1st Dept. 1971). Unable to determine from the record, aside from the trial judge's conclusions, whether an agreement had been reached, the Appellate Division authorized Ungar to apply to the trial court for resolution of that issue, suggesting that since Justice Fine might be called as a witness the application be made in the "I.C. Part" before another judge. Following such an application Justice Leff of the Supreme Court, New York County, apparently without according a hearing to Ungar, consulted the minutes of the proceeding before Justice Fine on April 28, 1971 (the date when the stipulation of settlement was allegedly made) and concluded in an opinion dated July 29, 1971, that "no binding settlement was made." His opinion was based upon the fact that the parties had been asked by Justice Fine, after hearing the stipulation settling the actions dictated into the record, whether they had "authority to *enter into* a stipulation," to which each party or his agent answered in the affirmative. Since the parties stated they had authority to "enter into" the agreement rather than that they had reached agreement, Justice Leff concluded that "[t]he foregoing unequivocally establishes that no agreement was entered into in open court." Aside from the gossamer fineness of the distinction drawn by the Justice in reaching this decision and the further question whether Ungar was given an opportunity to introduce evidence on the issue, it is unclear from the limited portion of the record available to us whether at the trial level or upon appellate review the issue of the alleged agreement was essential to the decision awarding foreclosure, the Appellate Division's affirmance, and the denial by the New York Court of Appeals of leave to appeal. See Neaderland v. Commissioner, *supra* at 642. The issue is one that can more appropriately be considered by the district court with the aid of all relevant portions of the state court record.

Accordingly the order of the district court denying preliminary injunctive relief is affirmed, its judgment dismissing the action is reversed and the case is remanded for further proceedings consistent with this opinion.