Sidney J. UNGAR, Plaintiff,

v.

Nahim ISAIAS and Joseph Mandell, Defendants.

No. 72 Civ. 21.

United States District Court, S. D. New York.

March 7, 1973.

See also, D.C., 336 F.Supp. 1233.

Zissu, Lore, Halper & Robson, New York City, for plaintiff; Morton S. Robson, New York City, of counsel.

Mandell & Bodner, New York City, for defendants; Emanuel Thebner, New York City, of counsel.

ROBERT J. WARD, District Judge.

Plaintiff in this diversity action seeks enforcement of an alleged agreement settling certain suits which arose from a mortgage foreclosure action in the Supreme Court of the State of New York. On April 20, 1972, this Court, Mac-Mahon, J., granted a motion by defendant Mandell dismissing the action against him.[1] An appeal was taken to the Court of Appeals for the Second Circuit. In an opinion dated December 6, 1972,[2] that Court reversed Judge Mac-Mahon and remanded the case with directions to consider with the aid of the state court record, "whether at the trial level or upon appellate review the issue of the alleged agreement was essential to the (state) decision awarding foreclo-

sure, the Appellate Division's affirmance, and the denial by the New York Court of Appeals of leave to appeal."[3] In addition, defendant Isaias has moved by order to show cause for an order dismissing the complaint pursuant to Rule 12, Fed.R.Civ.P., or granting summary judgment pursuant to Rule 56, Fed.R. Civ.P. Finally, plaintiff has cross moved for an order granting a preference and immediate trial pursuant to Rule 40, Fed.R.Civ.P., and for an order severing the issue of damages from the issue of the existence of the settlement agreement, pursuant to Rule 42(b), Fed.R.Civ.P. After the argument of these motions, plaintiff also made an *ex parte* application for an order of attachment pursuant to Section 6201 of the New York CPLR.

After a review of the entire state court record, this Court has determined that one of the essential elements in the state court judgment of foreclosure was a finding that the "alleged agreement forming the basis of Ungar's federal suit did not exist."[4] The doctrine of collateral estoppel precludes relitigating this state court finding here and is dispositive of all of the above motions. Accordingly, the action is dismissed as to both defendants on the basis of collateral estoppel.

In May, 1968, defendant Isaias' foreclosure action was instituted against plaintiff and others.[5] This simple lawsuit led to a number of other lawsuits, including a defamation action brought by defendant Mandell against plaintiff. Plaintiff contends that all of these actions were settled in April, 1971. Defendants do not deny that a stipulation was dictated into the record in a pro-

---

1. Defendant Isaias was served with process after the motion before Judge MacMahon was argued.

2. Ungar v. Mandell, Docket No. 72–1590, 471 F.2d 1163 (2d Cir. Dec. 6, 1972).

3. Id., at 1167.

4. Id., at 1166.

5. S. J. Ungar Realty Affiliates, Inc. is named as a party in some of the state court proceedings. It is controlled by Ungar through his ownership of all or the majority of its issued shares. *See*, Ungar v. Mandell, Docket No. 72–1590, 471 F.2d 1163, at 1164 n. 1 (2d Cir. Dec. 6, 1972).

ceeding before Justice Sidney A. Fine, of the Supreme Court, New York County, but claim that no binding settlement was ever concluded.

The question of whether a binding settlement was ever concluded has spawned a myriad of proceedings, motions and appeals. Of these, the following are pertinent to the issue of collateral estoppel:

1. April, 1971—Plaintiff moved to terminate the appointment of the receiver designated in defendant Isaias' mortgage foreclosure action. A series of settlement conferences ensued.

2. May 6, 1971—A motion was granted by Justice Fine confirming the alleged settlement. On July 1, 1971, the Appellate Division, First Department, reversed, Isaias v. Fischoff, 37 A.D.2d 702, 322 N.Y.S.2d 967 (1st Dep't 1971), because there was "no such procedure," as was used by Justice Fine, "known to our law." *Id.*

3. July 9, 1971—Plaintiff moved, *inter alia,* to vacate an injunction granted defendant Isaias in February, 1971, which had enjoined demolition of certain buildings. Justice James J. Leff, of the Supreme Court, New York County, in an unreported decision, denied the motion on July 29, 1971, after first determining that "no binding settlement was made."[6] Plaintiff claims that the settlement issue was "not submitted to Justice Leff for decision," and that it was unnecessary to the determination of the motion. On January 25, 1972, the Appellate Division dismissed an appeal from that decision. Ungar v. Fischoff, 38 A.D.2d 700, 328 N.Y.S.2d 813 (1st Dep't 1972).

4. September 21, 1971—The Appellate Division denied without opinion an application by plaintiff for a writ of prohibition against Justice Leff. Ungar v. Leff, 37 A.D.2d 765, 324 N.Y.S.2d 747 (1st Dep't 1971), appeal dismissed, 29 N.Y.2d 724, 326 N.Y.S.2d 385, 276 N.E. 2d 224 (1971), cert. denied, 406 U.S. 946, 92 S.Ct. 2046, 32 L.Ed.2d 333 (1972). An application for an order of mandamus against Justice Leff was also denied on November 4, 1971. Ungar v. Leff, 37 A.D.2d 934, 326 N.Y.S.2d 292 (1st Dep't 1971).

5. October 15, 1971—Plaintiff moved for a hearing as to the validity of the settlement. Justice Leff denied the motion, and an order was entered on October 29, 1971. Plaintiff appealed to the Appellate Division, arguing, *inter alia,* that the refusal by Justice Leff to grant a hearing constituted a denial of due process. The Appellate Division unanimously affirmed without opinion. Isaias v. Fischoff, 38 A.D.2d 1011, 330 N.Y.S.2d 999 (1st Dep't 1972).

6. February, 1972—A final judgment of foreclosure was entered by Justice Leff, and affirmed by the Appellate Division. Isaias v. Fischoff, 39 A.D.2d 850, 332 N.Y.S.2d 976 (1st Dep't 1972), leave to appeal denied, 31 N.Y.2d 837, 339 N.Y.S.2d 683, 291 N.E.2d 726 (1972).

As the Second Circuit indicated in its remand, the issue facing this Court is whether the determination by the state court that there was no valid settlement was "essential" to the state judgment of foreclosure. This Court is constrained to answer that question affirmatively. The state court would not have granted foreclosure if it had not determined that no settlement existed.[7]

---

6. For a discussion of the reasoning behind Justice Leff's decision, see, Ungar v. Mandell, *supra,* note 5 at 1167.

7. Plaintiff is correct in asserting that a settlement agreement is a contract giving rise to a separate cause of action from the action being settled. However, plaintiff wrongly concludes from this that the issue of the existence of the settlement agreement survives the foreclosure judgment. Plaintiff has put the cart before the horse. The existence of the settlement agreement must be demonstrated before the separate cause of action arises.

This Court finds it unnecessary to consider whether Justice Leff was correct in deciding the settlement issue in his July 29, 1971 opinion, or whether that particular decision alone was essential to the foreclosure judgment. Rather, on the basis of plaintiff's October 15, 1971 motion for a hearing as to the validity of the settlement, and its denial, it is clear that the settlement issue was reached and was essential to the foreclosure judgment. That motion was denied because, "the relief sought . . . ha(d) been determined by prior orders . . . . ." In other words, since Justice Leff had already decided that no settlement existed, he determined that there was no need for a hearing. Whereas, in his July 29, 1971 opinion a determination that no settlement existed may not have been essential, there appear to be no other grounds for Justice Leff's refusal to grant the hearing sought by the October 15, 1971 motion. Similarly, the state court would not have granted a judgment of foreclosure prior to a hearing on the threshold settlement issue if such an issue remained undetermined. However, no hearing was required because the state court had determined already that there was no settlement. Thus, the determination that there was no settlement was essential to the judgment of foreclosure.[8]

Reliance by plaintiff on Schwartz v. Public Administrator of Bronx County, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N. E.2d 725 (1969), is misplaced. There, the Court determined only that "there must have been a full and fair opportunity to contest the decision now said to be controlling." Id. at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 729. Plaintiff has had that opportunity. Plaintiff briefed the question of the alleged settlement and his right to a hearing in his October 15, 1971 motion before Justice Leff and his appeal from Justice Leff's October 29, 1971 order, as well as in his appeals to the New York Court of Appeals and his application for a writ of certiorari to the Supreme Court of the United States.[9]

Finally, in Judge Mansfield's remand the Court of Appeals indicated that one of the questions which troubled it was "whether Ungar was given an opportunity to introduce evidence on the issue (of the alleged settlement)." Ungar v. Mandell, Docket No. 72-1590, 471 F.2d 1163 at 1167 (2d Cir. Dec. 6, 1972). However, Judge Mansfield had before him only a limited portion of the state court record. His concern undoubtedly related to Justice Leff's original determination, July 29, 1971, that no settlement existed. This Court has not found it necessary to consider the legal import of that original determination.

Accordingly, the defendants' motions to dismiss the complaint on the basis of collateral estoppel are granted.

It is so ordered.

8. It should be noted that in examining the issue of collateral estoppel this Court must determine whether the settlement issue was "essential" to the state court judgment of foreclosure, and "actually litigated," not whether the state court was correct in concluding that no settlement existed. It is not the function of diversity jurisdiction to enable unsuccessful litigants in state proceedings to relitigate in a federal forum what is essentially an appeal from the state determination. The Court agrees that plaintiff's suit

appears to be a glaring example of the waste, duplication and vexatiousness that can be perpetrated through utilization of available diversity jurisdiction during the pendency of state court litigation in which identical issues are or can be raised. Ungar v. Mandell, Docket No. 72-1590, 471 F.2d 1163, at 1165 (2d Cir. Dec. 6, 1972).

9. Moreover, as noted above, plaintiff argued, inter alia, in the state proceedings that the refusal to grant a hearing on the settlement issue was a denial of due process.