Nicholas A. ATTICK, Jr. and Dana Investment Corporation, Plaintiffs,

v.

VALERIA ASSOCIATES, L.P.; Mark David Associates; Richard Schlesinger; William D. Weinstein; Leslie Schlesinger; Robert Schwartz; Quest–Co Ltd. a/k/a Questco Ltd.; AcQuest Corp.; Balbec Corp.; Balbec Contracting Corp.; Balbec Roofing Corp.; Balbec Plumbing Corp.; Balbec Painting Corp.; Down To Earth Balbec Corp.; Joan Robey; Martin Cohen; Schlesinger Management Corp.; Gilbert Schlesinger Management Co.; M.D. Leasing Corp.; Buchanan Associates; Marine Midland Bank, N.A.; Friedman Alpren & Green; Chemical Bank, N.A.; Dana Mark David a/k/a Dana Mark David Limited Partnership; First Constitution Bank; "John Doe;" "Jane Doe;" and "John Doe Corp." Defendants.

No. 91 Civ. 3758 (LLS).

United States District Court, S.D. New York.

March 19, 1992.

Martin Nardi Gamliel, Gerard Zwirn, New York City, for plaintiffs.

Dreyer and Traub, New York City (Stuart M. Fischman, Laurence S. Margolin, of counsel), for defendant First Constitution Bank.

Phillips Lytle Hitchcock Blaine & Huber, New York City (William J. Brennan, Edward S. Bloomberg, of counsel), for defendant Marine Midland Bank.

Parker Chapin Flattau & Klimpl, New York City (Lee Stremba, of counsel), for defendant Friedman Alpren & Green.

Chemical Bank Legal Dept., New York City (James Condren, of counsel), for defendant Chemical Bank.

Jackson & Nash, New York City (Ronald J. Herzog, of counsel), for defendants Leslie Schlesinger, Joan Robey and Buchanan Associates.

Alkalay Handler Robbins & Herman, New York City (Peter S. Herman, Craig Brown, of counsel), for defendants Valeria Associates, Richard Schlesinger, William D. Weinstein, Robert Schwartz, Quest–Co, Balbec Corp., Balbec Contracting, Balbec Roofing, Balbec Plumbing, Balbec Painting, Down To Earth Balbec, Martin Cohen, Schlesinger Management, Gilbert Schlesinger Management, M.D. Leasing and Dana Mark David.

## OPINION AND ORDER

STANTON, District Judge.

All defendants move to dismiss the complaint. Defendant First Constitution Bank also moves, as an alternative, for summary judgment.

### BACKGROUND

According to the complaint[1], Plaintiff Nicholas A. Attick, Jr. ("Attick") is the presi-

---

1. For the purpose of the motion to dismiss, all factual allegations in the complaint are deemed true.

**108**

dent of plaintiff Dana Investment Corporation ("Dana") (Complaint ¶ 9).

Defendant Mark David Associates ("M.D.A.") is a general partnership. Its general partners are defendants William D. Weinstein ("Weinstein") and Richard Schlesinger ("Schlesinger") (*Id.* ¶ 12). (M.D.A., Weinstein, and Schlesinger are collectively "the principals"). Defendants Balbec Corp., Balbec Contracting Corp., Balbec Roofing Corp., Balbec Painting Corp., Balbec Plumbing Corp., Down to Earth Balbec Corp., Schlesinger Management Corp., Quest–Co Ltd. a/k/a Questco Ltd., M.D. Leasing Corp., Gilbert Schlesinger Management Co., Leslie Schlesinger, AcQuest, Joan Robey, and Buchanan Associates (collectively "the affiliates") are allegedly all affiliated with, related to, or controlled by one or more of the principals (¶¶ 13, 15–16, 28, 63). Defendant Robert Schwartz is the chief financial employee or an officer of M.D.A. and some of the affiliates (¶ 18). Defendant Martin Cohen was the sales director of Quest–Co (¶ 29).

### Valeria Associates and the Valeria Property

Dana was a contract vendee of real estate in Cortlandt, New York (the "Valeria Property") (¶ 40). On or about December 11, 1987 Attick and M.D.A. entered into a limited partnership agreement (the "Valeria Agreement"), which formed defendant limited partnership Valeria Associates, L.P. ("Valeria"), to acquire, market, and develop the Valeria Property (¶¶ 43–43). M.D.A., the general partner, owned a 47.5% interest in Valeria. Attick, a limited partner, owned a 40% interest. Two limited partners who are not parties to this action each owned a 6.25% interest (¶ 44).

General partner M.D.A. had full responsibility for developing the Valeria Property, subject to certain contractual restrictions on how it was to discharge its duties (¶¶ 45–62). M.D.A. allegedly conspired with the affiliates to divert money from Valeria by having the affiliates submit false and fraudulent invoices to Valeria and causing Valeria to pay them. The conspirators then concealed their acts and Valeria's financial picture from Attick (¶¶ 72–103, 110).

On April 22, 1988 defendant Marine Midland Bank ("Marine") entered into a $27,500,-000 construction loan and mortgage agreement with Valeria (¶ 70–71; Complaint Exh. B). Under the agreement, Marine would lend money to Valeria upon presentation of documents verifying expenditures on the Valeria Property. However, Marine allegedly knowingly made disbursements upon presentation of false, fraudulent, and duplicative expenditure documents (¶¶ 99–103).

Valeria had a checking account with defendant Chemical Bank ("Chemical"). Only Schlesinger was permitted to sign checks on Valeria's behalf. Chemical allegedly paid checks signed by Schwartz, Weinstein, and Cohen (¶ 111).

Claim I alleges that Valeria, the principals, the affiliates, Schwartz, Cohen, Marine, and Chemical violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b) and (c). Claim II alleges that these defendants violated 18 U.S.C. § 1962(d) by conspiring to violate RICO.

### Dana Mark David and the Candlewood and Marina Properties

On May 1, 1987 Dana owned real estate in Danbury, Connecticut (the "Candlewood Property") and had a contract to purchase contiguous real estate (the "Marina Property") (Complaint ¶ 127). Dana and M.D.A. executed joint venture and limited partnership agreements (the "D.M.D. LP agreements") and formed defendant Dana Mark David ("D.M.D. LP"), a Connecticut limited partnership, to acquire the Marina Property, and to develop and sell luxury condominium dwelling units (¶¶ 129–130). Schlesinger and Weinstein were D.M.D. LP's general partners, and Dana was its limited partner.

The D.M.D. LP agreement provided that within four months Dana would obtain written commitments for the release of four encumbrances on the Marina Property ("the commitments"). Within 120 days after Dana delivered these commitments to the principals, M.D.A. was to obtain refinancing commitments for at least $8,000,000 (¶¶ 131–32; Exh. C). If M.D.A. did not obtain a refinancing commitment within 120 days, the joint venture and limited partnership would terminate, and the Candlewood and Marina prop-

erties would be transferred to Dana (¶ 133; Exh. C).

A rider to the D.M.D. LP agreement provided that if Dana did not obtain the commitments within four months, Dana could either (a) withdraw from D.M.D. LP, and M.D.A. would succeed to its interest or (b) pay to M.D.A. $2,500,000, plus interest from May 1, 1987, plus reasonable costs expended by M.D.A. in its acquisition of the Marina Property. Dana's failure to exercise either option within two days would "constitute an automatic grant to [M.D.A.] of an irrevocable power of attorney, coupled with an interest, to execute whatever documents are necessary to ... transfer the interest of Dana in the Limited Partnership to [M.D.A.]" (*Id.* Exh. C—Rider ¶ 5).

On July 22, 1987 Attick allegedly provided the commitments, by letter mailed to Weinstein (¶ 139). The principals allegedly ignored the letter and their duty to obtain refinancing (¶ 140). On July 8, 1988 Dana informed the principals in writing that the joint venture and limited partnership were terminated because of their failure to obtain refinancing (¶ 141).

On August 13, 1988 and on August 30, 1988, the principals allegedly fraudulently conveyed the Marina Property from D.M.D. LP to M.D.A. in two quitclaim deeds, for no consideration (*Id.* ¶¶ 143–46; Exh. E and F).

On August 31, 1988 Schlesinger, on behalf of M.D.A., obtained from defendant First Constitution Bank ("FC Bank") a commercial construction loan of $4,600,000, secured by a mortgage on the Marina Property (¶ 148). Schlesinger and Weinstein allegedly falsely and fraudulently represented to FC Bank that M.D.A. had lawful title to the Marina Property (¶ 152). M.D.A. and affiliates Balbec Corp. and Quest–Co Ltd. then submitted false and fraudulent requisitions for disbursements on the loan (¶¶ 155–56).

FC Bank allegedly had a duty to investigate M.D.A.'s title to the Marina Property before issuing the mortgage loan (¶ 159). FC Bank issued the loan although it allegedly knew, or should have known, that M.D.A. had invalid title (¶¶ 161–62). M.D.A. default-ed on the loan, and FC Bank has instituted foreclosure proceedings (¶¶ 163–64).

Claim III alleges that the principals, FC Bank, Balbec Corp., and Quest–Co Ltd. violated RICO, 18 U.S.C. § 1962(b) and (c). Claim IV alleges that the defendants violated 18 U.S.C. § 1962(d) by conspiring to violate RICO. In claims V through XVI, plaintiffs assert state law claims, pendent to claims I, II, III and IV, against all defendants.

## *DISCUSSION*

### I. *MOTION TO DISMISS AND THE PLEADING REQUIREMENTS*

In passing on a motion to dismiss, the allegations in the complaint are liberally construed and considered in the light most favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Where scienter is alleged generally, plaintiff must plead particular facts which allow a strong inference of scienter. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). "[P]laintiffs can be required to supply a factual basis for their conclusory allegations regarding [defendants'] knowledge. It is reasonable to require that the plaintiffs specifically plead those events which they assert give rise to a strong inference that defendants had knowledge of the facts...." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Where fraud allegations are pleaded on information and belief, the factual basis for plaintiffs' information and belief must be pleaded with particularity.

> Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge. This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.

*Wexner,* 902 F.2d at 172 (citations omitted).

## II. *STANDING*

■ Defendants argue that plaintiffs Attick and Dana do not have standing to assert the RICO claims (claims I through IV) because only the limited partnerships, Valeria Associates and D.M.D. LP, were directly injured, and plaintiffs, as limited partners, were injured only derivatively.

In *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), the Second Circuit held that a shareholder does not have standing to assert a RICO claim where the corporation is directly injured, and the shareholder suffers only from the decrease in the value of his investment. "[P]laintiffs lack standing to sue under RICO.... The legal injury, if any, was to the firm. Any decrease in value of plaintiffs' shares merely reflects the decrease in value of the firm as a result of the alleged illegal conduct." *See also Carter v. Berger,* 777 F.2d 1173, 1176 (7th Cir.1985) (In RICO cases, "an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief.")

In *Klebanow v. New York Produce Exch.,* 344 F.2d 294, 296 (2d Cir.1965) the Second Circuit construed Section 4 of the Clayton Act, 15 U.S.C. § 15, which authorized suit by

"any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." *Klebanow* found that a limited partner's standing was analogous to a corporate shareholder's standing: "[W]hen business is conducted by a partnership, the statute views the partnership rather than a partner as the person injured."[2]

■ The RICO statute, 18 U.S.C. § 1964(c), authorizes suit by "[a]ny person injured in his business or property by reason of a violation of section 1962." Because this language tracks Section 4 of the Clayton Act, "rules established in anti-trust cases for identifying the proper plaintiffs should be applied to RICO ... too." *Mid–State Fertilizer Co. v. Exchange Nat. Bank,* 877 F.2d 1333, 1335 (7th Cir.1989).

■ Under *Klebanow* and *Rand* a limited partner does not have standing to assert RICO claims if the only injury he suffered is the diminution of the value of his investment in the limited partnership. *Cf. Abeloff v. Barth,* 119 F.R.D. 332, 334 (D.Mass.1988) (claim against general partner for breach of fiduciary duty to limited partnership is claim of partnership entity, not claim of limited partner); *Rothstein v. Seidman & Seidman,* 410 F.Supp. 244, 250 (S.D.N.Y.1976) (limited partner does not have standing to assert fraud claim against accountant whose negligence harmed limited partnership); *Strain v. Seven Hills Assocs.,* 75 A.D.2d 360, 429 N.Y.S.2d 424, 432 (1st Dept.1980):

> [A] limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation. As a general proposition, where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless the shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action

---

2. *Klebanow* held that a limited partner could therefore bring derivative claims on behalf of a partnership. 344 F.2d at 297–99.

on behalf of the corporation to recover the loss for the benefit of the corporation. (citations omitted).

Claims I and II allege that the principals and others looted Valeria's funds and wrongfully increased the mortgage lien on its property.[3] Attick, the limited partner, does not have standing to assert these claims, which are therefore dismissed.[4]

■ However, Dana has standing to assert claims III and IV. Paragraph 133 of the complaint alleges:

The Joint Venture Limited Partnership Agreement further provided that if [M.D.A.] were [sic] unable to obtain a commitment from an institutional lender for the refinancing described above, within the time period described, the joint venture would terminate and the real property would be transferred back to DANA subject to the then outstanding indebtedness and certain cash payments made by [M.D.A.]

Dana alleges that M.D.A. did not obtain the commitment within the time allowed, and therefore, the Candlewood and Marina Properties should have been transferred to Dana. Instead, M.D.A. transferred the Marina property to itself, and encumbered it with a mortgage loan. Dana therefore alleges a direct interest in the Marina Property and a direct injury to that interest.

## III. *FC BANK'S MOTION TO DISMISS CLAIMS III AND IV*

■ FC Bank argues that claims III and IV against it should be dismissed because of Dana's failure to plead the predicate RICO acts with particularity.

■ Dana alleges that FC Bank aided and abetted the principals' acts of mail, wire, and bank fraud. Dana must plead wrongdoing by the primary parties, FC Bank's knowledge of the primary violations, and FC Bank's substantial assistance to the primary parties. *Cf. IIT Int'l Inv. Trust v. Cornfeld,*

619 F.2d 909, 922 (2d Cir.1980) (elements of aiding and abetting securities fraud). FC Bank argues that its knowledge of the alleged fraud is not pleaded with particularity.

Dana alleges that FC Bank knew that the quitclaim deeds conveying the Marina Property from D.M.D. LP to M.D.A. were invalid, unauthorized, and a fraud on the plaintiff (Complaint ¶ 160). The factual basis for this conclusory allegation is that FC Bank received copies of the D.M.D. LP agreements. FC Bank allegedly knew or should have known that under these agreements the principals were not authorized to execute the quitclaim deeds (¶¶ 157–58).

That is insufficient to justify the inference of FC Bank's knowledge. A rider to the D.M.D. LP agreements permitted M.D.A. to execute such quitclaims deed under certain circumstances (*Id.* Exh. C—Rider ¶ 5(c)). No facts are pleaded showing that FC Bank, or any of its agents, knew or should have known that those circumstances had not occurred.

■ Dana argues that FC Bank owed it a fiduciary duty, and therefore its reckless failure to discover the fraud is sufficient to charge it with knowledge. However, generally a bank does not owe its lenders (or limited partners of its lenders) a fiduciary duty. *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 122 (2d Cir. 1984); *Weinberger v. Kendrick,* 698 F.2d 61, 78–79 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). The bank had no direct dealings with Dana, and Dana has not provided any factual or legal support for its assertion that the bank owed it a fiduciary duty. Therefore, Dana's argument is rejected. *See Martin v. EVP Second Corp.,* 1991 WL 131176, 1991 U.S. Dist. LEXIS 9234 (S.D.N.Y.1991) (claim that defendant breached fiduciary duty to plaintiff dismissed for failure to allege facts supporting conclusory allegation of defendant's fidu-

---

3. *See* RICO Specifications ¶ 4.1 at p. 52 ("Plaintiffs ... are the victims of defendants' unlawful conduct in that their investment in VALERIA is now subject to the lien of defendant MARINE MIDLAND BANK, N.A. ...")

4. Because Attick has no standing to assert claims I and II, it is unnecessary to decide whether those claims should be dismissed under Rules 9(b) or 12(b) or because there is a prior action pending, as defendants urge.

ciary duty); *Boley v. Pineloch Assocs., Ltd.,* 700 F.Supp. 673, 681 (S.D.N.Y.1988) (same).

■ The allegations against FC Bank of aiding and abetting bank, mail, and wire fraud all fall for failure to plead FC Bank's scienter. Claims III and IV are dismissed against FC Bank because of Dana's failure to plead that the Bank committed any predicate racketeering acts.

## IV. *THE MOTION TO DISMISS OF THE PRINCIPALS, BALBEC CORP., AND QUEST-CO LTD.*

The principals and affiliates Balbec Corp. and Quest–Co Ltd. argue that claims III and IV against them should be dismissed because they fail to state a RICO claim, and because the fraud allegations are not pleaded with particularity.

### 1. *Pattern of Racketeering Activity*

■ Defendants argue that Dana does not properly plead that they engaged in a pattern of racketeering activity. To plead such a pattern, Dana must allege that each defendant either committed or aided and abetted the commission of at least two RICO predicate acts, and that the alleged predicate acts relate to each other and "amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989) (italics in original).

■ A pattern of racketeering activity is not pleaded against Balbec Corp. and Quest-co. In paragraph 156 Dana alleges:

> Upon information and belief, that defendants BALBEC CORP. and QUESTCO knowingly furnished false and fraudulent invoices for work, labor and services that were never performed or that was [sic] overbilled with knowledge that said invoices would be submitted to defendant FIRST CONSTITUTION BANK for draw-down payment; that at all times mentioned herein BALBEC CORP. and QUESTCO served and acted as a conduit

to the "enterprise" to obtain construction loan funds from FIRST CONSTITUTION BANK.

To plead a pattern of bank fraud acts, Dana is required to, but does not, specify two specific false or fraudulent invoices from each affiliate. Moreover, Dana provides no facts upon which its information and belief are based. Therefore, claims III and IV are dismissed against Balbec Corp. and Questco for failure properly to plead that they committed predicate racketeering acts.

■ The bank fraud allegation against the principals is well pleaded. 18 U.S.C. § 1344 makes it a crime knowingly:

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

Dana alleges that the principals obtained a mortgage from FC Bank by means of the false and fraudulent pretense and representation that M.D.A. had valid title to the Marina Property. Dana alleges, with sufficient particularity, that M.D.A.'s title was fraudulently obtained and a sham.[5] It also alleges with particularity other circumstances of the fraud, including the date and the amount of the loan (Complaint ¶ 148).

■ The allegation of knowingly transporting across state lines money obtained through fraud, in violation of 18 U.S.C. § 2314, is pleaded properly. Dana alleges (*Id.* ¶ 154):

> On August 31, 1988, by virtue of the fraudulent acts and misrepresentations described above, the defendants obtained the sum of eighty thousand ($80,000.00) dollars from defendant FIRST CONSTITUTION BANK and thereafter, upon information and belief, transported or caused to be transported a portion thereof from the State of Connecticut into the State of New York.

---

5. The principals' argument that the allegation is false, that M.D.A.'s title to the Marina Property is valid, and that the quitclaim deeds were permissible under the D.M.D. LP agreements cannot prevail on a motion to dismiss, where the complaint's allegations must be taken as true.

---

The principals argue that this allegation does not comply with Rule 9(b) because it does not specify which fraudulent acts or which defendants it is referring to, and because it is pleaded on information and belief.

Reading paragraph 154 with the generosity required on a motion to dismiss, the fraudulent acts referred to are the acts of bank fraud alleged in the preceding paragraphs, and the term "defendants" refers to the principals.

■■■ Paragraph 154 is only partially pleaded on information and belief. When a violation of 18 U.S.C. § 2314 is pleaded as a RICO predicate act, only those elements of the violation that involve fraud must be pleaded with particularity. The other elements, including the element of interstate transportation which is pleaded on information and belief, are subject to the liberal pleading standards of Fed.R.Civ.P. 8(a). *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 792 n. 7 (3rd Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *Construction Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212, 1230 n. 12 (S.D.N.Y.1989). Plaintiff has adequately pleaded a violation of 18 U.S.C. § 2314.[6]

Since the complaint adequately pleads the two RICO predicate acts of bank fraud and interstate transportation of money obtained through fraud, there is no need to consider the alleged defects in the pleading of the mail and wire fraud claims.

■■■■ Dana alleges that the principals executed two separate but related schemes (the Valeria scheme[7] and the Marina scheme) fraudulently to obtain an interest in real estate, borrow money from a bank against that interest, and divert that money to themselves. This sufficiently alleges a "pattern." under *H.J., Inc.*

## 2. *Acquiring an Interest in an Enterprise*

■■■ Claim III alleges violations of 18 U.S.C. § 1962(b) and (c). The principals argue that claim III does not state a claim under § 1962(b), which forbids "any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise...."

Dana does not plead that the principals acquired or maintained an interest in an enterprise. In paragraph 128 it alleges that "defendants desired to acquire an interest in the said real property," but that does not state a claim under § 1962(b), because real property is not an enterprise. Furthermore, Dana is required to, but does not, allege a causal connection between defendants' interest in or control of an enterprise and Dana's injuries. *See Browning Ave. Realty Corp. v. Rosenshein*, 774 F.Supp. 129, 140 (S.D.N.Y. 1991); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 709 F.Supp. 438, 452 (S.D.N.Y.1989).

■■■ Claim III states a claim only under 18 U.S.C. § 1962(c) which forbids "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."

## 3. *RICO Conspiracy*

■■■ Claim IV alleges a violation of 18 U.S.C. § 1962(d) which forbids "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

6. The principals' argument that Dana merely alleges a breach of contract is rejected. While transferring the Marina Property from D.M.D. LP to M.D.A. arguably merely breached defendants' contract with Dana, obtaining a bank loan by misrepresenting that the deeds were valid, and transporting the mortgage funds across state lines go beyond a mere breach.

7. Although Dana and Attick do not have standing to assert claims involving the Valeria scheme, those claims are considered for the limited purpose of determining whether the principals engaged in a "pattern" of racketeering. *Cf. Hunt v. Gouverneur Townhouse Partners—1988 L.P.*, 1991 WL 253126, 1991 U.S. Dist. LEXIS 16749 (S.D.N.Y. November 18, 1991) (plaintiff injured by at least one predicate act may establish that defendant engaged in a pattern of predicate acts by alleging other predicate acts which he has no standing to assert).

In paragraph 169 of the complaint, Dana alleges:

That since or about 1988 and continuing to 1990, defendants SCHLESINGER, WEINSTEIN, [M.D.A. and D.M.D. LP] and each of them, ... conspired and formed a deliberate illegal and unlawful ... conspiracy to acquire an interest in the Candlewood Lake and Marina Property and thereafter defraud plaintiff of its interest therein by gaining control of said property through a joint venture limited partnership arrangement, by making unauthorized loans and mortgages secured by said property and an illegal and unauthorized transfer of said property to their "enterprise" all through a continuous pattern of racketeering activity.

"Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990). *Accord Beverly Hills Design Studio, Inc. v. Morris,* 1990 WL 120645, 1990 U.S. Dist LEXIS 6099 (S.D.N.Y.1990) (complaint must allege that each defendant agreed to commit two or more predicate crimes); *Morin,* 711 F.Supp. 97, at 111 (S.D.N.Y.1989).

The properly pleaded predicate acts are bank fraud and interstate transportation of fraudulently obtained money. Dana therefore must, but does not, allege specifically that each defendant agreed to commit both these acts. The alleged agreement to commit common law fraud cannot be the basis for a RICO conspiracy claim, because common law fraud is not a predicate act. Claim IV fails to state a claim, and is therefore dismissed.

## V. *THE PENDENT STATE LAW CLAIMS*

■ Claims V, VI, VII, VIII, IX, and XVI assert state law claims pendent to federal claims I and II (the Valeria claims). Because claims I and II were dismissed, these pendent claims are dismissed for lack of an independent basis of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Claim XV is dismissed to the extent that it relates to the Valeria transaction.

The parties have stipulated to dismiss claims X, XI, and XII, against defendant Friedman Alpern & Green, without prejudice.

■ 28 U.S.C. § 1367(a) allows supplemental jurisdiction over pendent state claims which "form part of the same case or controversy" as the federal claims asserted, even if the state claims involve additional parties. Therefore, this court has supplemental jurisdiction over claim XIII (against the principals and FC Bank), claim XIV (against FC Bank), and claim XV (against the principals, Balbec Corp. and Questco), which are part of the same case or controversy as the RICO claim (claim III) which was sustained.

### 1. *Claim XIII—Declaratory Judgment and Injunction*

■ In Claim XIII, Dana seeks a declaratory judgment that D.M.D. LP's quitclaim deeds and FC Bank's mortgage on the Marina property are invalid, and an injunction against further transfer of the property and against enforcement or transfer of the mortgage. FC Bank has already commenced foreclosure proceedings on the mortgage in the Connecticut state court. (Complaint § 217).

FC Bank argues that this court cannot enjoin state foreclosure proceedings. *See* 28 U.S.C. § 2283 (federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

Dana argues that the requested injunction is necessary in aid of this court's jurisdiction and to protect or effectuate this court's judgment because if FC Bank forecloses on the mortgage and this court later finds the mortgage invalid, that judgment would be ineffective.

■ However, neither of those exceptions apply. The "necessary in aid of its jurisdiction" exception applies when a state court proceeding threatens to dispose of property which is the basis for federal *in rem* jurisdic-

tion. Consequently, it does not apply to this case, where Dana asserts *in personam* jurisdiction over FC Bank. *See Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 131–32 (5th Cir.1990) (federal court cannot enjoin ongoing state foreclosure proceedings; injunction not necessary in aid of jurisdiction where "lawsuit is ... an ordinary *in personam* action, and the mere fact that debts secured by real property are at issue ... does not transform it into an *in rem* proceeding.").

 The "protect or effectuate its judgments" exception, also referred to as the "relitigation" exception, applies only to matters already fully adjudicated, and judgments already entered, by a federal court. "[T]his does not permit a federal court to enjoin state proceedings to protect a judgment that the federal court may make in the future but has not yet made." 17 Wright, Miller & Cooper, Federal Practice and Procedure § 4226 at 548–49; *Bruce v. Martin,* 724 F.Supp. 124, 131 n. 11 (S.D.N.Y.1989).

Accordingly, no injunction can issue. *See Ungar v. Mandell,* 471 F.2d 1163, 1165 (2d Cir.1972) (no exception to the anti-injunction act applies, and federal court cannot enjoin ongoing state court foreclosure and sale proceedings). *Accord, Millonzi v. Bank of Hillside,* 605 F.Supp. 140, 143–44 (N.D.Ill.1985). Consequently, Claim XIII is dismissed in part, to the extent that it seeks an injunction against FC Bank.

### 2. *Claim XIV—Against FC Bank for Negligence*

 In claim XIV Dana alleges that FC Bank owed it a duty to investigate the circumstances of the quitclaim deeds before issuing the mortgage loan, and failed to exercise due care in issuing the loan and in allowing disbursements under it (Complaint ¶¶ 227–30).

FC Bank argues that it had no duty to Dana, and that its alleged duty is not pleaded with particularity. However, claim XIV states a claim, does not need to be pleaded with particularity as it does not allege fraud or mistake, and is properly pleaded in accordance with Fed.R.Civ.P. 8(a).

### 3. *Summary Judgment (Claims XIII and XIV)*

 FC Bank moves for summary judgment dismissing claim XIII, to the extent that it seeks a declaratory judgment that FC Bank's lien on the Marina Property is invalid, and claim XIV. Under Fed.R.Civ.P. 56(c) the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

FC Bank has not established its entitlement to judgment as a matter of law with respect to claim XIII. It argues that it acted as a "bona fide lender for value, without any prior notice whatsoever of any facts or circumstances which would have put a prudent lender ... on notice as to any alleged fraud or as to any other right, title or interest in conflict with [FC Bank's] position as a first mortgagee." (FC Bank's Rule 3(g) Stmnt. ¶ 11). However, FC Bank's submission is insufficient because it fails to set forth the legal elements it must establish to show that its mortgage is valid, and to show that there is no factual dispute with respect to each element.

 FC Bank is entitled as a matter of law to summary judgment dismissing claim XIV. The elements of a claim for negligence are a duty to plaintiff and breach of that duty. FC Bank had no direct dealings with Dana, the limited partner of its borrower, and did not owe Dana a duty of care. *Cf. National Union Fire Ins. Co. v. Eaton,* 701 F.Supp. 1031, 1040 (S.D.N.Y. 1988). In any event, there is no showing that FC Bank's failure to discover the fraud was negligent. In order to defeat FC Bank's motion, Dana was required to, but did not, submit factual or legal support for its allegation that FC Bank owed it a duty and breached that duty. *See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (non-movant may not rest upon conclusory allegations or denials to defeat summary judgment motion, but rather must provide "concrete particulars" in the form of supporting facts or arguments in opposition);

*Markowitz v. Republic Nat. Bank,* 651 F.2d 825, 828 (2d Cir.1981) (same).

### *CONCLUSION*

The motions of all parties to dismiss claims I, II, IV, V, VI, VII, VIII, IX, and XVI are granted.

The principals' motion to dismiss claims III and XV is granted in part and denied in part; their motion to dismiss claim XIII is denied.

FC Bank's motion to dismiss claim III is granted; its motion to dismiss claim XIII pursuant to Rules 12(b) and 56(c) is granted in part and denied in part; and its motion for summary judgment dismissing claim XIV is granted.

Balbec Corp. and Questco's motion to dismiss claim III is granted and their motion to dismiss claim XV is granted in part and denied in part. Claim XV is dismissed against all the other affiliates.

Plaintiffs have leave to replead the dismissed claims within 30 days.