Miriam G. CARROLL, Plaintiff–Appellant,

v.

CITY OF MOUNT CLEMENS, John Beeding, Jr., Harry Diehl, Jolyne Fisher, and Rex A. Burgess, Defendants–Appellees.

No. 96–2443.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 23, 1997.

Decided March 19, 1998.

Hal O. Carroll (argued and briefed), Vandeveer Garzia, Detroit, MI, for Plaintiff–Appellant.

Mary Massaron Ross (briefed), Jeffrey C. Gerish (argued), Plunkett & Cooney, Detroit, MI, for Defendants–Appellees.

Before: MERRITT, WELLFORD, and MOORE, Circuit Judges.

MERRITT, J., delivered the opinion of the court. WELLFORD, J. (p. 1076), delivered a separate concurring opinion. MOORE, J. (pp. 1077–80), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

MERRITT, Circuit Judge.

The District Court dismissed Plaintiff Miriam Carroll's complaint on abstention grounds. The court held that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), required it to defer to an ongoing state building-code enforcement action against Carroll. This appeal raises the issue of whether *Younger* abstention applies to a federal action seeking only monetary damages in the face of such an ongoing civil enforcement proceeding in state court.

I.

Carroll owns two rooming houses in Mount Clemens, Michigan, which have only commu-

nal bathroom facilities. The city disapproved of these for health and safety purposes. It enacted an ordinance requiring all rooming houses to have separate bathrooms in each dwelling unit. The city then initiated civil enforcement actions against Carroll's properties in a state court of general jurisdiction, seeking to enjoin their continued use without individual bathrooms. As an affirmative defense in the state proceeding, Carroll claimed the ordinance discriminated against her low-income tenants and thus deprived them of equal protection of the laws. She also filed her own lawsuit in the form of a counterclaim for injunctive relief and damages, alleging that the ordinance violated state and federal law and that its enforcement resulted in an unconstitutional taking under the Michigan and United States Constitutions. This state enforcement action, along with Carroll's separate counterclaim, is currently pending before the Michigan Circuit Court in Macomb County.

Shortly before the statute of limitations expired, Carroll filed the present suit in federal court for damages under 42 U.S.C. § 1983 and the Fair Housing Act, 42 U.S.C. § 3604. She sued the city, the city's attorney, and the three city council members who voted in favor of the ordinance. Carroll sued the individual defendants in their official and individual capacities. Like her affirmative defense and counterclaim in state court, her various federal claims allege violation of her rights under the Due Process, Equal Protection, and Contracts Clauses and the rights of her tenants to be free from discrimination on the basis of their race, nationality, and disability. Her Fair Housing Act claim is that the defendants are "otherwise mak[ing] housing] unavailable" on the basis of "race, color, . . . or national origin" by enforcing the city's bathroom ordinance against her properties.

The defendants moved to dismiss Carroll's federal complaint on the basis of *Younger* abstention. The District Court found that Carroll's federal action involved essentially the same claims pending before the state court. *Carroll v. City of Mount Clemens,* 945 F.Supp. 1071, 1073–74 (E.D.Mich.1996). The court therefore abstained under *Younger* and dismissed her complaint. *Id.* at 1075–76.

Carroll's appeal concerns whether *Younger* abstention applies to a federal action seeking only monetary damages and whether the District Court should stay or dismiss those claims under *Younger.*

## II.

*Younger* abstention applies when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Kelm v. Hyatt,* 44 F.3d 415, 419 (6th Cir.1995); *Nilsson v. Ruppert, Bronson & Chicarelli Co.,* 888 F.2d 452, 454 (6th Cir.1989). Although *Younger* arose in the context of a state criminal proceeding, the Supreme Court has extended its principles to civil enforcement actions, such as the state proceeding here. *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (state civil fraud proceeding to recover improper benefits by state welfare department); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975) (state civil nuisance action against adult theater by local sheriff and prosecutor). Moreover, the federal plaintiff does not have to seek injunctive relief against an ongoing state proceeding for a federal court to abstain. *Younger* abstention also applies in federal declaratory judgment actions because they involve "precisely the same interference with and disruption of state proceedings" as an injunction. *Samuels v. Mackell,* 401 U.S. 66, 72, 91 S.Ct. 764, 767, 27 L.Ed.2d 688 (1971).

In our litigious era, multiple lawsuits arising from the same occurrence are commonplace. *Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice in such an era. When a person is the target of an ongoing state action involving important state interests, the state defendant cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. If the state defendant files such a case, *Younger* abstention requires the federal court to

defer to the state proceeding. *Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir. 1988); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987) ("when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy").

The sources of the *Younger* doctrine are long-standing and important. First, "equity jurisprudence" prevents federal courts from interfering with ongoing state proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied relief." *Younger*, 401 U.S. at 43–44, 91 S.Ct. at 750. This helps "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate." *Id.* at 44, 91 S.Ct. at 750. These reasons are reinforced by what Justice Black called the "more vital consideration" of "comity," a proper respect for a state's sovereign ability to have its own courts determine its own law, and the "highly important" principle of "Our Federalism," that is, the sensitivity "to the legitimate interests of both State and National Governments, . . . in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44–45, 91 S.Ct. at 750–51.

■ Carroll's present federal action for damages under 42 U.S.C. § 1983 and the Fair Housing Act is a textbook case for *Younger* abstention. The city's civil enforcement action against her is currently pending in state court, those proceedings involve the state's important interest in enforcing its state and local housing codes, and Carroll may raise all of her claims—state, federal, and constitutional—under the state court's general and concurrent jurisdiction. The District Court's decision to abstain avoided duplication of legal proceedings, deferred to the state's sovereignty over its law, and respected the principles of comity inherent to our federalism. Given these considerations, the District Court's application of *Younger* abstention to the present case was proper.

### III.

■ In the present case, however, the District Court should have stayed, not dismissed, Carroll's complaint. Requiring the District Court to stay rather than dismiss damages claims may be an empty formality under the facts of this case. The District Court may have nothing left to do but clear the case number off of its docket once the state proceedings conclude. If Carroll prevails on the merits of her case in the state proceeding, her federal damages claims will be precluded by the doctrine of res judicata, as outlined in *Allen v. McCurry*, 449 U.S. 90, 97–99, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980), and *Migra v. Warren City School District*, 465 U.S. 75, 84–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984), because Carroll's pending state counterclaim is essentially identical to her federal lawsuit. If Carroll loses on the merits of her case in the state proceeding, res judicata will also preclude her federal claims due to the state court's concurrent jurisdiction over those claims. Carroll's only relief from an adverse state judgment will be from Michigan's appellate courts. The only federal review available to her will then be from the United States Supreme Court on certiorari. Staying her damages claims on the federal docket thus will likely be "of little moment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283, 115 S.Ct. 2137, 2141, 132 L.Ed.2d 214 (1995).

Nonetheless, in the interests of caution, we are constrained to remand the case to the District Court with instructions to stay rather than dismiss Carroll's complaint until the state proceedings conclude. *See Giulini v. Blessing*, 654 F.2d 189, 193–94 (2d Cir.1981) (finding the choice between a stay or a dismissal of federal § 1983 damages claim arising from a state zoning enforcement action requires an exercise of "sound discretion" in light of the posture of the state-court action); American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* § 1371 Commentary, at 285 (1969) (recommending entry of a stay when the state-court action could prove "ineffective"). The District Court should stay Carroll's federal lawsuit to protect against the

possibility that she could be deprived of the opportunity to present the merits of her damages claims in state court. If the state court should dispose of her federal claims on grounds that do not reach the merits, Carroll's federal action would still be pending. She would not have to contend with a statute of limitations defense and various tolling arguments upon the filing of a new federal lawsuit. Given the state court's considerable delay in this case, a stay will protect Carroll's claims from the statute of limitations. *See Deakins v. Monaghan,* 484 U.S. 193, 202–03 & n. 7, 108 S.Ct. 523, 529–30 & n. 7, 98 L.Ed.2d 529 (1988).

We therefore affirm the District Court's application of *Younger* abstention to Carroll's case but remand the case for the District Court to stay rather than dismiss her lawsuit until the conclusion of the state proceedings.

WELLFORD, Circuit Judge, concurring.

I concur fully in Judge Merritt's opinion in this case. I write separately to respond to Judge Moore's dissent.

Judge Moore seems to concede that the *Younger* abstention under the circumstances of this case has support, directly or indirectly, in the First, Third, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits. She points to two cases that would seem to disagree with this rather overwhelming precedential authority. Judge Moore relies most heavily on *Alexander v. Ieyoub,* 62 F.3d 709 (5th Cir. 1995).

*Alexander,* however, in my view, is distinguishable. The basis for the holding is that *Younger* abstention should not apply when the plaintiff in the federal § 1983 action is suing for *damages alone.*

> The *Younger* abstention is not appropriate in the instant case. We have previously observed that the *Younger* abstention doctrine does not apply to a suit seeking only damages .... her federal § 1983 suit seeks only monetary relief for the Defendants' delay in instituting a forfeiture proceeding. Thus, we conclude that the district court abused its discretion

. . .

*Alexander,* 62 F.3d at 713 (footnote omitted). *Alexander* sought "only monetary relief," unlike the plaintiff in the instant case.

The Second Circuit decision, relied upon in the dissent, also represents dubious authority to weigh against the overwhelming view of seven other circuits, not counting our own circuit.

> However, a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views. *Ungar v. Mandell,* 471 F.2d 1163, 1166 (2d Cir.1972); *Rosenfeld v. Black,* 445 F.2d 1337, 1341 n. 5 (2d Cir.1971); *Klein v. Walston & Co.,* 432 F.2d 936, 937 (2d Cir.1970); *Mottolese v. Kaufman,* 176 F.2d 301, 302 (2d Cir.1949). Indeed, the state court decision might under some circumstances provide a defendant in the federal action with the defense of collateral estoppel, see *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *Sealfon v. United States,* 332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948); *Klein, supra,* since the mutuality-of-parties doctrine would not apply, *Parklane Hosiery Co., Inc., et al. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). On this record such a stay would represent an exercise of sound discretion.

*Giulini v. Blessing,* 654 F.2d 189, 193–94 (2d Cir.1981).

I believe further that enforcement of local zoning laws with potential penalties, such as cessation of ongoing activity and fines, is akin and comparable to enforcement of a state or local criminal misdemeanor prosecution. I find that application of the principles of equitable abstention are particularly applicable in this situation.

I, therefore, concur and find the dissent to be "off the mark" in this factual situation.

MOORE, Circuit Judge, concurring in part, dissenting in part.

Because I believe the majority extended inappropriately the *Younger* abstention doctrine to § 1983 damages actions, I respectfully dissent. However, I concur in the majority's view that the district court should have stayed rather than dismissed Carroll's § 1983 action.

## A. *Abstention*

The Supreme Court has yet to decide whether *Younger* abstention applies to § 1983 damages actions. *See, e.g., Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988) ("We need not decide the extent to which the *Younger* doctrine applies to a federal action seeking only monetary relief...."). Despite the Supreme Court's silence, many of our sister circuits have addressed this issue. Several circuits have applied *Younger* abstention to § 1983 damages actions. *See Amerson v. Iowa*, 94 F.3d 510, 513 (8th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997); *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 15 n. 1 (1st Cir.1992); *Traverso v. Penn*, 874 F.2d 209, 213 (4th Cir.1989); *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988); *Mann v. Jett*, 781 F.2d 1448, 1449 (9th Cir. 1986); *Doby v. Strength*, 758 F.2d 1405, 1406 (11th Cir.1985); *Parkhurst v. Wyoming*, 641 F.2d 775, 777 (10th Cir.1981). Conversely, the Fifth Circuit unequivocally holds that *Younger* has no applicability to a claim for damages. *See Alexander v. Ieyoub*, 62 F.3d 709, 713 & n. 22 (5th Cir.1995). Similarly, the Second Circuit takes the position that a federal court should not dismiss damage claims on *Younger* principles alone. *Giulini v. Blessing*, 654 F.2d 189, 192–94 (2d Cir. 1981). Today, the majority opinion aligns our circuit with those circuits applying *Younger* abstention to § 1983 damages actions. I dissent from that opinion.

"[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 358, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989).

"Underlying [this] assertion[ ] is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *Id.* at 359, 109 S.Ct. at 2513 (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234, 43 S.Ct. 79, 82–83, 67 L.Ed. 226 (1922)). "However, because federal courts do have discretion in determining whether to grant certain types of relief, abstention is appropriate in a few carefully defined situations." *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir.1992). "Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *New Orleans Pub. Serv.*, 491 U.S. at 359, 109 S.Ct. at 2513 (quoting *Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. at 751 (1971)). Abstention, nevertheless, is the exception and not the rule. "[T]he federal courts' obligation to adjudicate claims within their jurisdiction [is] 'virtually unflagging.'" *Id.* (citing *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988)).

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971), the Supreme Court held that federal courts should abstain from enjoining state criminal prosecutions absent extraordinary circumstances. The Supreme Court has since expanded the reach of *Younger* to noncriminal judicial proceedings in which important state interests are involved. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). *Younger* abstention reflects "a strong federal policy against federal-court interference with pending state judicial proceedings." *Id.* at 431, 102 S.Ct. at 2521. Thus, a federal court will only consider *Younger* abstention when the requested relief would constitute undue federal interference in state judicial or quasi-judicial proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601–05, 95 S.Ct. 1200, 1206–09, 43 L.Ed.2d 482 (1975). Accordingly, "where federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* ab-

stention are not implicated." *Gwynedd Properties,* 970 F.2d at 1201.

In this case, the principles of comity underlying *Younger* are not implicated. This is a parallel proceeding in the federal court that does not interfere with the state proceeding because Carroll is seeking only monetary damages in the federal court. As this court has previously observed, "[s]uits which seek only monetary relief are much less intrusive into legitimate state functions than actions for injunctive or declaratory relief.... Moreover, while federal adjudication of a damage claim may affect state judicial proceedings in some circumstances, the mere possibility of an impact on state proceedings is insufficient to warrant abstention." *Carras v. Williams,* 807 F.2d 1286, 1291 (6th Cir.1986). *Cf.* Jeremy D. Sosna, comment, Quackenbush v. Allstate Ins. Co.: *The Continuing Saga of the* Younger *Doctrine,* 82 IOWA L. REV. 275, 284 (1996) ("An examination of the Younger doctrine reveals that the context in which it arose, and the justifications for its sustenance by the Supreme Court, are rooted in traditional principles of equity. Thus, federal courts should regard *Quackenbush* as a constraint on their power to invoke the principles of *Younger* in cases at law.").

Not only is it inappropriate to apply *Younger* abstention to actions at law simply seeking damages as relief, but do so also would deprive the state court defendant/federal court plaintiff of a federal forum in which to litigate her federal constitutional claim. This result impairs the purpose of § 1983 and subverts the proper role of the federal courts in enforcing federal rights. According to the Supreme Court, "[s]ection 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster,* 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). Consequently, § 1983 along with other post-Civil War civil rights legislation established the "role of the Federal Government as a guarantor of basic federal rights against state power...." *Id. See generally* Donald H. Zeigler, *A Reassessment of the* Younger *Doctrine in Light of the Legislative History of Reconstruction,* 1983 DUKE L.J. 987. Although the Court has admonished that, in the absence of evidence to the contrary, federal courts must presume the state courts are able to protect the interests of the federal plaintiff, *see Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 19, 107 S.Ct. 1519, 1530, 95 L.Ed.2d 1 (1987), it has also acknowledged that "[t]he very purpose of § 1983 was to interpose the *federal courts* between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum,* 407 U.S. at 242, 92 S.Ct. at 2162 (quotation omitted) (emphasis added).

Here, Carroll filed a § 1983 action for damages against the City of Mount Clemens alleging the City's legislative action violated her federal constitutional rights. The majority holds the district court properly applied *Younger* abstention to Carroll's damages action because she could raise her constitutional claims in state court. In so holding, the majority ignores the following observation made by Justice Stewart in *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975): "The duty of the federal courts to adjudicate and vindicate federal constitutional rights is, of course, shared with state courts, but there can be no doubt that the federal courts are 'the primary and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.'" *Id.* at 355, 95 S.Ct. at 2295 (Stewart, J., dissenting) (quoting F. FRANKFURTER & J. LANDIS, THE BUSINESS OF THE SUPREME COURT: A STUDY IN THE FEDERAL JUDICIAL SYSTEM 65 (1927)).

Given the central role of the federal courts in protecting federal constitutional rights, the majority errs in extending *Younger* abstention to § 1983 damages actions. The majority fails to provide any reasoned justification for such an extension of *Younger,* simply relying on the general principles of "comity" and "Our Federalism" discussed in *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–51. That very paragraph of *Younger,* however, reflects the key distinction between *Younger* itself and

the extension of *Younger* espoused by the majority today: *Younger* was premised on the "fundamental purpose of restraining equity jurisdiction," specifically to prevent federal courts from enjoining pending (criminal) proceedings in state courts. Where, as here, the federal action is for damages only, the normal constraints of equity practice are absent, and the interference with comity and federalism is substantially reduced. In these circumstances, the extension of *Younger* to a damages action is unwise; it is not required by Supreme Court precedent; and it unduly restricts the protections afforded by § 1983.

## B. *Stay*

I concur in the majority's view that when applying *Younger* abstention to § 1983 damages actions, district courts must stay rather than dismiss the federal action. Nevertheless, I write separately to amplify why a stay is required. In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), the Supreme Court addressed the application of *Burford* abstention to common law damages claims. *Quackenbush*, 517 U.S. at 708–10, 116 S.Ct. at 1717. In so doing, however, the Court explained that *all* abstention doctrines are equitable in nature, and the granting of equitable relief (including declaratory relief) lies within the sound discretion of the federal courts. *Id.* at 716–20, 116 S.Ct. at 1721–22.

When abstention applies, a federal court, in its discretion, can decline to exercise its equitable powers. *Id.* at 716–18, 116 S.Ct. at 1721. Conversely, an action for damages does not lie within a federal court's discretion; thus, damages actions require a federal court to retain its jurisdiction by entering a stay when abstention is appropriate rather than altogether dismissing the case. *Id.* at 716–22, 116 S.Ct. at 1721–23. The Court emphasized that "[i]n those cases in which we have applied *traditional* abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded; that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether." *Id.* at 728–32,

116 S.Ct. at 1727–28 (emphasis added) (quotations omitted).

To further highlight this point, Justice Scalia wrote separately to respond to Justice Kennedy who would "not rule out ... the possibility that a federal court might dismiss a suit for damages in a case where a serious affront to the interests of federalism could be averted in no other way." *Id.* at 731, 116 S.Ct. at 1729. In response, Justice Scalia commented that:

I would not have joined today's opinion if I believed it left such discretionary dismissal available. Such action is foreclosed, I think, by the Court's holding, clearly summarized in the concluding sentences of the opinion: "Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the *Burford* doctrine."

*Id.* at 731–32, 116 S.Ct. at 1728 (quoting opinion of the Court at 1728).

While *Quackenbush* involved *Burford* abstention, its reasoning applies with equal force to *Younger* abstention. *Younger* abstention concerns itself with federal court interference with state court proceedings, and a stay simply does not implicate that concern. Rather, a stay merely preserves the availability of a federal forum in the event the state court fails to address the plaintiff's federal claims. Preservation of a federal forum strikes the appropriate balance between countervailing interests: the state's interests in operating its own courts free from federal interference and the federal interest in protecting federal rights. *See, e.g., Quackenbush*, 517 U.S. at 726–31, 116 S.Ct. at 1726–27 (Court applied *Burford* abstention to strike balance between "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court," and "the State's interests in maintaining uniformity in the treatment of an essentially local problem.") (internal quotations omitted); *Deakins v. Monaghan*, 484 U.S. 193, 203 n. 7, 108 S.Ct. 523, 530 n. 7, 98

L.Ed.2d 529 (recognizing that unless federal court retained jurisdiction during the pendency of the state proceeding, a plaintiff could be barred by the statute of limitations from pursuing her claims in federal court). *See also DeMauro·v. DeMauro*, 115 F.3d 94, 98 (1st Cir.1997) (citing *Quackenbush* for proposition that "in a damages action, the district court may only order a stay pending resolution of state proceedings; it cannot invoke abstention to dismiss the suit altogether."); HART AND WECHSLER, THE FEDERAL COURTS AND THE FEDERAL SYSTEM 86–87 (Richard H. Fallon, Daniel J. Meltzer, David L. Shapiro eds., 4th ed. Supp.1997) (The Court in *Quackenbush* "drew a sharp distinction between a federal court's staying an action and its dismissing or remanding the action. Dismissal or remand ... is justified only in cases (like those seeking an equitable remedy or a declaratory judgment) in which a federal court has discretion whether to grant relief...." *Id.* at 86. Although *Quackenbush* involved *Burford* abstention, the authors observed that "[t]he Court's opinion appears, however, to have more, general applicability, as it discussed a broad range of related doctrines...." *Id.* at 87). From the foregoing analysis, I conclude *Quackenbush* provides that federal courts do not have the authority to dismiss damages actions when abstaining.

### CONCLUSION

Principles of fairness dictate that when a party alleges a violation of her constitutional rights, a speedy resolution is required. As a result, the facts of this case mandate that the federal action should proceed. The City brought its enforcement action in state court in July 1993. Yet, as of oral argument in this court in October 1997 the state court action was still pending. It is now 1998, and the parties have not informed us of any resolution in the state court proceeding. Given the glacial pace at which the state court is moving, Carroll asserts that she had to file the federal action to avoid the expiration of the statute of limitations. Appellant's Br. at 32 n.3. The dearth of activity in the state court belies any argument that there is federal interference with the state proceeding. In fact, it appears that the federal court may be

the only court capable of timely resolving Carroll's allegations that the City has violated her constitutional rights. Nevertheless, to the extent that *Younger* abstention applies, *Quackenbush* counsels that where a plaintiff has properly invoked a federal court's jurisdiction by filing a § 1983 damages action, federal courts should preserve the availability of the federal forum by staying rather than dismissing the action.

For the foregoing reasons, I respectfully dissent from the majority's extension of *Younger* to § 1983 damages actions. Given the majority's decision to extend *Younger,* I concur in the majority's determination that a stay rather than a dismissal is warranted in this case.