**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0614n.06
Filed: August 23, 2007

No. 06-3120

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LEATHERWORKS PARTNERSHIP, ET AL.,
    *Plaintiffs-Appellants,*

                                On Appeal from the
        v.                       United States District Court for
                                the Northern District of Ohio

LOUIS BOCCIA, CITY OF GIRARD, OHIO, ET AL.,
    *Defendants-Appellees.*

_____

Before: KENNEDY, MOORE, and MCKEAGUE, Circuit Judges

**KENNEDY, Circuit Judge.** Leatherworks Partnership and Navy Friends (hereinafter "Leatherworks") appeal a decision of the United States District Court for the Northern District of Ohio, lifting a stay in proceedings pending resolution of a state foreclosure action and dismissing without prejudice on *Younger* abstention grounds counts of its complaint brought against Louis T. Boccia and the L.T. Boccia Construction Company (hereinafter "Boccia") and the City of Girard (hereinafter "the City").[1] Leatherworks asserts that there was no ongoing state judicial proceeding for *Younger* purposes with respect to the claims contained in its first amended complaint under counts (I) breach of express contract by Boccia, (II) breach of implied contract by Boccia, (III) promissory estoppel under the contract against Boccia, (IV) liability for punitive damages against Boccia, (V) slander of title by Boccia, (VI) civil conspiracy to slander title against Boccia and the

_____

[1]The district court did not dismiss one count of the amended complaint brought under § 1983, but the parties later voluntarily dismissed this equal protection claim.

City, (VII) fraud by Boccia, (VIII) violation of the Public Records Act by the City, (X) slander of title by the City, (XI) intentional interference with prospective advantage by the City, (XII) intentional interference with contractual rights by the City, and (XIII) liability for injunctive relief against the City. We find that the district court did not apply the appropriate framework for determining whether to abstain from deciding these claims. We remand to the district court so it can review these claims using the correct abstention analysis and in light of the present stage of the state court proceedings.

## BACKGROUND

On December 15, 1993, Leatherworks purchased 26.5 acres of land zoned for heavy industry. A four-story brick structure existed on the property, as well as quantities of titanium and other hazardous items, which the former owner continued to store on the property. On October 25, 1995, an arson fire destroyed the four-story building on the property owned, but not yet occupied, by Leatherworks. That same day, the City Fire Department extinguished the fire and its mayor issued an emergency order authorizing defendant Boccia, a demolition contractor, to raze the building. Boccia hired one Daniel A. Terreri & Sons (hereinafter "Terreri") to remove asbestos during the demolition. The mayor of the City issued an order condemning the property and materials stored on it. Boccia charged $124,507 for its demolition work. The City paid $12,019 on April 30, 1996, to Boccia for a portion of its work.

On May 31, 1996, the City filed suit against Leatherworks in the Court of Common Pleas, Trumbull County (Case No. 96-CV-0902) (hereinafter "the 1996 settlement action") seeking $140,000 in monetary damages for costs incurred related to extinguishing the fire and the

2

demolition.[2] Boccia and Terreri intervened as plaintiffs.[3] December 23, 1996, counsel for all parties except Terreri appeared before the magistrate and arrived at a settlement agreement of all of Boccia's and the City's claims against Leatherworks in exchange for payments by Leatherworks of $5,000 and $45,000 to these plaintiffs, respectively, to be made within sixty days (i.e. by February 21, 1997), as well as to complete the demolition and cleanup work on the property by May 1, 1997. Should Leatherworks fail to uphold its obligations under the agreement, it allegedly consented to judgments being entered in favor of the City in the amount of $75,000 and in favor of Boccia for $124,507.[4] This settlement agreement, while memorialized in a document denominated judgment, did not purport to resolve Terreri's claims and did not contain the language in the magistrate's order "no just reason for delay," which Ohio Rule of Civil Procedure 54(b) requires to render such an agreement a final judgment. The trial judge entered judgment accepting the terms of the agreement with the same omission of the language that would have made it immediately appealable when one party's claim was unresolved.

When Leatherworks apparently did not make the payments provided for in the agreement within sixty days, the state trial court entered the aforementioned consent judgments against Leatherworks on March 25, 1997, as provided for in the agreement. The claims of Terreri were not

---

[2]This amount included $124,507 for demolition, $3,600 for extinguishing the fire, and $12,019 for reimbursement of the installment that the City had already paid to Boccia.

[3]Terreri cross-claimed and counterclaimed against Boccia and the City for its $13,000 unpaid invoice.

[4]Leatherworks claims that it did not authorize its attorney to accept such a settlement and remained unaware of it until the day before the sixty-day mark, attributing its attorney's lack of attention to the matter to the fact that he was the subject of a Department of Justice investigation, which eventually resulted in his disbarment.

resolved by this judgment and remained pending. Boccia entered a judgment lien against the property in the amount of $124,507 on June 27, 1997. In October, November, and December 1997, Boccia and Gordon Schaaf, one of Leatherworks's principals, corresponded regarding a second proposed settlement that, if reached, would entail a mutual release of all claims and would entitle Boccia to an up-front payment of $78,000, as well as an additional $5,000 upon completion of the cleanup job. Boccia apparently never signed this proposed settlement agreement of around November 17, 1997, but it received and cashed Leatherworks's payments of $20,000 and $58,000 totaling the amount agreed upon shortly thereafter. Though Boccia assured Schaaf that the cleanup was moving forward, subsequent letters from Leatherworks about the status of the cleanup went unanswered. Schaaf informed the City, via a letter to the mayor dated December 27, 1997, that Boccia had been paid and had cashed Leatherworks's checks, but that for some reason, Boccia was not performing the promised cleanup. On May 5, 1999, the City filed its judgment lien on the property with the clerk of courts in the amount of $75,000.

The following month, on June 14, 1999, the City filed a second lawsuit against Leatherworks in the Court of Common Pleas, Trumbull County (Case No. 99-CV-1084) (hereinafter "the 1999 foreclosure action"). Its complaint stated one count for foreclosure based on the judgment of $75,000, a second count for penalties of $250 per day since October 25, 1995, for violating City Ordinance No. 523.01, and a third count for fraud upon a creditor that sought to set aside a security lien against the property relating to a loan from one partner to another. The trial court initially set a bench trial for Spring 2001, but Leatherworks had retained new counsel, and the court permitted additional discovery. During this discovery, Leatherworks allegedly learned that, during the period when Boccia was supposed to be engaged in cleanup, Boccia was actually salvaging steel and

4

pocketing proceeds and that the City had paid Boccia $12,019 toward its invoice. In June or July of 2001, Leatherworks states that it became aware of an agreement between the City and Boccia regarding the property and a foreclosure sale.[5] In September 2001, Leatherworks adopted its own redevelopment plan with private funds.

After the foreclosure action had been pending for nearly two years, Leatherworks moved to request an evidentiary hearing in the 1996 settlement action and to vacate the judgment of March 25, 1997, asserting that it was not a final judgment. In August 2001, Leatherworks moved to set aside the December 23, 1996 settlement agreement based on fraud. These motions were denied, and Leatherworks appealed their denial on November 28, 2001 (Appellate Case No. 2001-TR-0138). On January 24, 2002, Leatherworks filed an additional motion to stay enforcement of the judgment pending appeal and to stay the foreclosure action, for which trial had been scheduled for February 19, 2002.[6] On December 30, 2002, the court of appeals declined to hear Leatherworks's appeal from denial of its motion to vacate the March 25, 1997 judgment and set aside the settlement agreement, finding that the orders appealed from were interlocutory and thus not appealable as final judgments since Terreri's claim for asbestos removal costs was still pending. *City of Girard v. Leatherworks Partnership*, No. 2001-T-0138, 2002 WL 31886692 (Ohio App. Dec. 27, 2002).

---

[5]Ownership through foreclosure would enable the City to gain access to the $200,000 grant it had applied for if it were granted by the Environmental Protection Agency (hereinafter "EPA"). Ultimately, the EPA did award the City the grant on August 2, 1999, but, because the City does not own the property, the grant money has not changed hands.

[6]Leatherworks filed in the Eleventh District of Ohio Court of Appeals for a writ of prohibition (Case No. 2002-TR-0017), which that court dismissed on November 22, 2002, because Leatherworks had the ability to remedy any error by appeal.

On remand, the state trial court proceeded with resolving Terreri's claims, commencing trial before a magistrate on March 12, 2003. Noting that Boccia and Leatherworks had neglected to file an answer asserting that Terreri had failed to perform the asbestos abatement or was otherwise not entitled to compensation, and that the action had been pending for seven years, the magistrate refused the request to file a late answer and entered a default judgment on liability and proceeding to trial on the issue of damages. The magistrate found in favor of Terreri and recommended assessment of $13,004 in damages, the judgment to be entered against Leatherworks on a quantum meruit basis. The trial court overruled all objections to the magistrate's decision and adopted it, holding Boccia and Leatherworks jointly and severally liable in the amount of $13,004. This disposition of the Terreri claim rendered the March 25, 1997 consent judgment entry a final appealable order. On January 28, 2004, Leatherworks subsequently filed an appeal of this decision.[7]

Leatherworks filed this action on November 14, 2003, with the United States District Court for the Northern District of Ohio, alleging in its first amended complaint breach of express contract, breach of implied in fact contract, promissory estoppel, and entitlement to punitive damages in contract, all founded on Boccia's failure to comply with the terms of the November 16, 1997 letter that Leatherworks claims was a binding settlement agreement, referred to by Leatherworks as "the contract of November 17, 1997."

The first amended complaint also asserted slander of title by Boccia and the City, as well as conspiracy to slander title by both Boccia and the City, based on their maintenance of liens on the property, despite the alleged lack of final judgment and the mutual release component of the

---

[7]The district court opinion that we review issued before the Ohio Court of Appeals decided this appeal.

November 17, 1997 contract. Additionally, the complaint asserted Boccia committed fraud in accepting Leatherworks's payments under the November 17, 1997 terms while failing to clean up the property as promised and continuing to assert a judgment lien.

Leatherworks continued to allege that the City violated the Ohio Public Records Act by refusing to turn over documents relating to the property that Leatherworks sought in conjunction with its efforts to conduct environmental tests on the property. Also, it asserted that the City slandered its title by filing and maintaining a lien on the property based on an interlocutory order and that the City intentionally interfered with prospective advantage and contract by obstructing the negotiation and sale of the property by refusing to provide public access to documents requested for the purpose of conducting environmental tests necessary to complete the sale of the property. Leatherworks sought injunctive relief against the City with respect to this interference.[8]

The City moved for judgment on the pleadings based on the doctrines of abstention under *Younger v. Harris*, 401 U.S. 37 (1971) and *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1959). The district court concluded that *Pullman* abstention did not apply but found that abstention under *Younger* was appropriate. However, pursuant to abstention principles, the court did not dismiss the action, as requested by the City, but rather stayed all proceedings pending resolution of the state court 1999 foreclosure action, issuing its order on August 27, 2004. The "Court conclud[ed] that given the pendency of state court proceedings that are so closely related to the issues raised here, the better course would be to stay the instant action until the state court actions are

_____

[8]Leatherworks also sued the mayor of the City, James Melfi, in his individual capacity, but, on July 2, 2004, by joint stipulation of the parties, the court dismissed him from the action. Additionally, Leatherworks's complaint before the district court contained a § 1983 claim for denial of equal protection, but this claim was voluntarily dismissed, and thus no appeal of that count is before this court.

7

completely resolved." The district court provided that "[t]hereafter, any matter not already resolved by the state court (i.e., any matter that is not collaterally estopped or barred by the doctrine of res judicata) can be resolved by this Court."

The district court noted that "[t]here have been few recent proceedings in the 1999 [foreclosure] case; in fact, the last entry on the docket, a voluntary dismissal of [Leatherworks's] crossclaim against Boccia Construction, is dated November 11, 2003, just three days before the filing of the instant case." The City continued to demand foreclosure and requested that the EPA list the property on its National Priority List. In September of 2003, Leatherworks disclosed that it was in negotiations with two entities to purchase the property and requested environmental documents from the City. Leatherworks complained that environmental studies were not turned over and that the City had engaged in "an intense campaign of harassment and intimidation of [Leatherworks]."

The district court rejected Leatherworks's arguments that, for all counts of the complaint against Boccia except the conspiracy to slander title claim, attempted to enforce the terms of the purported November 17, 1997 contract that it asserted constituted a settlement agreement and release of all preexisting claims and asserted that the federal district court case was the only forum for litigation of these issues. Though Leatherworks had asserted related claims against Boccia in the 1999 foreclosure action, it had voluntarily dismissed them. Leatherworks argued that it was irrelevant that other matters remained pending in the 1999 foreclosure action and the 1996 settlement action.

The district court was similarly unpersuaded by Leatherworks's arguments that all counts of the complaint against the City except the conspiracy to slander title claim, were unrelated to issues raised in the various state lawsuits and appeals. The district court also rejected Leatherworks's

8

argument that the conspiracy to slander title claim was not implicated in any state action. The August 27, 2004 opinion states that "this Court believes that [the conspiracy to slander title claim] is definitely implicated in the 1999 foreclosure action where the state court will be called on to determine whether or not there was a contract formed between the Boccia defendants and [Leatherworks] *and* whether or not the judgment in the 1996 case in favor of the City was a final judgement upon which it could base a foreclosure action" (emphasis in original). Meanwhile, the court advised the parties that "it would be in all parties' best interests to find a way, sooner rather than later, to reach a global settlement of all federal and state proceedings, including if possible, the action against Berk Realty, Inc., et al."[9]

On May 18, 2005, "[i]n light of the glacial speed at which the parties have pursued this case and in light of the pendency of state actions which should resolve all but the Section 1983 claim," the court lifted the stay, dismissed without prejudice all state claims "on the basis of *Younger* abstention," and resumed proceedings on the one federal claim, a § 1983 claim against the City. Leatherworks and the City filed a joint motion to dismiss the § 1983 claim without prejudice, which the judge granted on September 19, 2005. Leatherworks moved for reconsideration of the Court's order dismissing all counts with the exception of the § 1983 claim, and the district court denied this motion on November 15, 2005.

**ANALYSIS**

---

[9]Leatherworks also filed a federal action against Berk Realty, from whom Leatherworks bought the property at issue. The district court dismissed its claims against Berk Realty based on collateral estoppel, and an appeal of that judgment is before this court as well (Case No. 06-3122).

9

Leatherworks here appeals the district court's August 27, 2004, May 18, 2005, and November 15, 2005 orders, asserting that *Younger* abstention is inappropriate as to all remaining counts. A district court's decision to invoke *Younger* abstention warrants de novo review. *Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000).[10] On appeal, Leatherworks asserts that the district court was in error to abstain from deciding the claims against Boccia "because the November 1997 agreement reduced all Boccia Construction claims against Leatherworks Partnership arising from its alleged unpaid invoices to a contract." Also, Leatherworks argues that Boccia's lien was invalid in the first place because it was not based on a final judgment, and Boccia had surrendered any right it had to a lien based on this second purported November 1997 settlement. Leatherworks argues that the claims against the City do not qualify for abstention because "a valid lien backed by a final judgment did not underpin the claim for relief sought in [the foreclosure action]" and other claims pertained to "actions taken by Girard in 2003 . . . after [the foreclosure action] was filed." Essentially, Leatherworks posits that no state court proceedings are pending for the purpose of any of these claims.

When reviewing an application of *Younger* abstention, it is critical to bear in mind that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989).

---

[10]"A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *See Carroll v. Mt. Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998). This court "reviews a district court's decision to dismiss a case without prejudice after a decision to abstain under *Younger* for an abuse of discretion." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006). "In exercising this discretion, a district court should . . . consider whether there are any statute of limitations issues should the case be dismissed and the limitations clock continue to run." *Carroll*, 139 F.3d at 1075. As Leatherworks does not devote any of its brief to the development of an alternative argument that, even if the district court correctly abstained, dismissal was not the appropriate remedy, we similarly focus our analysis on the decision to abstain.

The Supreme Court has stated that federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id.* at 358 (quoting *Cohens v. Virginia*, 19 U.S. 264 (1821)). The test that district courts must apply when endeavoring to determine whether abstention under *Younger* is appropriate has been clearly articulated in prior cases. In order for a federal district court to abstain from hearing a claim pursuant to *Younger* abstention, it must find that three requirements are satisfied: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). A court should proceed deliberately through its review of each of these three factors for each claim with respect to each party to ensure that abstention remains "the exception, not the rule." *New Orleans Public Service, Inc.*, 491 U.S. at 359 (quoting *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984)).

The district court's decision in the present case does not reflect such careful analysis and restraint. While the August 27, 2004 district court opinion sifts through the various counts of Leatherworks's amended complaint and makes some references to the state court proceedings instituted prior to the federal action, it provides little insight into its application of the three-step *Younger* test by which it arrived at the conclusion that abstention was appropriate. It is indisputable that much state court litigation has ensued between these parties, and, based on the record before us, it appears that some matters are still pending in the Ohio courts. Nevertheless, the *Younger* inquiry requires much more than this observation. The Supreme Court has explicitly stated that "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." *Id.* at 373. Here, the district court opinion ambiguously proclaims that, although it was "a

11

difficult call to make, given the complexity of the proceedings that have already occurred," and ultimately concluding that, "given the pendency of state court proceedings that are *closely related to* the issues raised [in federal court], the better course would be to stay the instant action until the state court actions are completely resolved" (emphasis added). The court did not connect its result, though admittedly difficult to achieve, to the subject matter and progress of specific state court proceedings, nor did it address with any specificity the way in which federal disposition of the claims would usurp the state courts' abilities to decide matters of important state interest.[11]

The *Colorado River* abstention doctrine would appear better suited to address the district court's concerns about parallel state and federal proceedings. After the dismissal of the § 1983 equal protection claim, it is difficult to identify any constitutional issue that would warrant *Younger* abstention analysis.[12] The Supreme Court specifically considered the propriety of federal abstention in situations where state and federal courts are confronted with the same dispute in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Therein, the Court explained that "[g]enerally . . . the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 817 (citations omitted). Only in exceptional cases, when a federal court determines that (1) problems occurring from the exercise of state and federal jurisdiction over the same res, (2) the relative inconvenience of the federal forum,

---

[11]The district court no doubt shares our frustration with the parties for their failure to resolve their differences, even after repeated judicial recommendation that they do so. Anyone observant of the protracted litigation between these parties regarding a single piece of property would likely bemoan the expenditure of judicial resources that the dispute has, and continues to, entail at the state and federal levels.

[12]The district court's denial of the motion for reconsideration occurred on November 15, 2005, after the judge had granted Leatherworks's and the City's joint motion to voluntarily dismiss the § 1983 claim on September 19, 2005.

(3) the desirability of avoiding piecemeal litigation, (4) the order in which the state and federal proceedings commenced, and (5) whether federal or state law controls the litigation, outweigh the duty to exercise jurisdiction is federal abstention an appropriate response to parallel state proceedings. *Id.* at 818-19; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-24 (1983). An inchoate objective to avoid duplicative litigation is not enough to justify abstention.

Based on our analysis of the complaint, the underlying issue in Leatherworks's counts against Boccia relates to Leatherworks's assertion that "Boccia Construction had no right to assert a lien after the November 17, 1997, contract was formed." The force of the 1996 settlement action depends upon whether Leatherworks and Boccia arrived at a subsequent and overriding agreement. We remand to the district court to apply the appropriate abstention analysis to each count of the federal complaint to determine and articulate which, if any, state court actions currently remain pending that will determine whether the 1996 settlement and judgment remain in force between Leatherworks and Boccia and whether Leatherworks and Boccia arrived at an agreement subsequent to and overriding the 1996 settlement action as alleged by Leatherworks. Also, it may be necessary to consider whether some claims are governed by res judicata.

Additionally, the district court should determine whether it is appropriate to abstain from deciding Leatherworks's claims against the City with the same level of scrutiny to the subject matter and progress of state court actions. It would seem that the validity of the judgment liens will have to be decided in the state foreclosure action and is also the crux of Leatherworks's claims against the City alleging slander of title, conspiracy to slander title, and interference with contractual rights. Though the validity of the City's lien is not as apparently relevant to Leatherworks's claims against

13

the City asserting violation of the Ohio Public Records Act, intentional interference with prospective advantage, intentional interference with contract, and liability for injunctive relief, the rightful ownership of the property is intertwined in all of these claims. We remand to the district court to conduct abstention analysis given the current state of the foreclosure action, whatever it may be.

## CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** to the district court for application of the appropriate abstention doctrine for each claim as to each party and in light of the current stage of state court proceedings.