RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EDWIN M. COLES; LISA COLES; BUFFALO PRAIRIE,
LLC; VINCENT OTRUSINA; ROBERT C. BICKLEY;
WARREN JONES; WIKEL FARMS, LTD.,
          *Plaintiffs-Appellants,*

       *v.*

JONATHAN GRANVILLE; ERIE METROPARKS BOARD
OF PARK COMMISSIONERS; WHEELING AND LAKE
ERIE RAILWAY CO.; NORFOLK SOUTHERN CORP.,
          *Defendants-Appellees.*

No. 05-3342

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-07595—James G. Carr, Chief District Judge.

Argued: April 25, 2006

Decided and Filed: May 22, 2006

Before: GUY, DAUGHTREY, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Nels J. Ackerson, ACKERSON KAUFFMAN FEX, Washington, D.C., for Appellants.
John D. Latchney, TOMINO & LATCHNEY, LLC, LPA, Medina, Ohio, for Appellees.
**ON BRIEF:** Nels J. Ackerson, ACKERSON KAUFFMAN FEX, PC, Washington, D.C., Thomas
R. Lucas, D. Jeffery Rengel, RENGEL LAW OFFICE, Sandusky, Ohio, J. Anthony Logan,
BROOKS & LOGAN CO., LPA, Columbus, Ohio, for Appellants. John D. Latchney, TOMINO
& LATCHNEY, LLC, LPA, Medina, Ohio, Dennis M. O'Toole, BAUMGARTNER & O'TOOLE,
Sheffield Village, Ohio, for Appellees.

_____

## OPINION

_____

    CLAY, Circuit Judge. Plaintiff landowners appeal the January 25, 2005 order of the United
States District Court for the Northern District of Ohio, which dismissed Plaintiffs' 42 U.S.C.
§§ 1983, 1985(2), 1985(3), and state law claims against Defendant public officials and railroad
companies for actions taken relative to Plaintiffs' real property. The district court held that

Plaintiffs' action was not ripe in part, barred by the *Rooker-Feldman* doctrine in part, and merited *Younger* abstention in part.

For the reasons which follow, we **AFFIRM** the district court's dismissal of this case.

## I.

## BACKGROUND

### A.    Substantive Facts

Plaintiffs are landowners along the old Milan Canal in Erie County, Ohio. The old Milan Canal extended, during its period of use, for 6.5 miles from the town of Milan, Ohio northward to the mouth of the Huron river, at which point the Huron river emptied into Lake Erie. Plaintiffs Edwin M. Coles, Lisa Coles, Vincent Otrusina, Robert C. Bickley, Warren Jones, and Buffalo Prairie, LLC were all parties to a prior state court proceeding in which Erie County Metroparks sought a declaratory judgment that Plaintiffs possessed no property interest in a 150 foot wide corridor along the old canal. Metroparks claimed to be the valid assignee of an infinite duration leasehold interest in that corridor and was interested in transforming the corridor into a recreational trail. The state court proceeding ultimately found that Metroparks did possess a valid leasehold interest, and further defined the property subject to the leasehold as follows:

> The description of the Leased Property in the Lease unambiguously describes it as consisting of all lands then owned by the Milan Canal Company within a 150 foot wide corridor from approximately the intersection of Maine and Union Streets in the Village of Milan northerly to the north of the mouth of the Huron River. The only lands owned by the Milan Canal Company at the time the Lease was executed lay within the boundaries of the Kneeland Townsend property and the Ebeneser Merry property, neither of which lay north of Lock No. 1. *Therefore, the Leased Property extends from the southern terminus of the old Milan Canal at or near the southerly end of the Milan Canal basin in the Village of Milan to its northerly terminus at the Huron River at the former location of Lock No. 1* on premises now owned by Wikel Farms, Ltd. immediately north of Mason Road in Section 2, Milan Township, Erie County.

(J.A. at 123 (emphasis added).)

Plaintiff Wikel Farms was not a party to the prior state court proceeding. Rather, Wikel Farms is currently involved in an appropriation action brought by Erie County Metroparks against Wikel Farms in state court, which involves portions of Wikel Farms' property along the old Milan Canal. Metroparks initiated that action in 1999 and, pursuant to Ohio law, deposited $20,000 in escrow at the onset of litigation, which is Metroparks' estimated valuation of the disputed property. Wikel Farms places a much higher valuation on the property, that of $500,000. That suit is not yet resolved.

### B.    Procedural History

The state court judgment against all Plaintiffs (save Wikel Farms), establishing Metroparks' leasehold interest in the Milan Canal corridor, was final in September 2002. Metroparks then proceeded to take actions to develop the recreational trail. Plaintiffs brought the instant suit on October 7, 2003 in the United States District Court for the Northern District of Ohio against Defendants Jonathan Granville (Director-Secretary of Erie Metroparks), the Erie Metroparks Board of Park Commissioners, Wheeling & Lake Erie Railway Co., and Norfolk Southern Corp. Plaintiffs sought redress under 42 U.S.C. §§ 1983, 1985(2), and 1985(3) for violations of their rights under

the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Plaintiffs alleged that in their efforts to develop the recreational trail, Defendants laid claim to property beyond that found by Ohio state courts to fall within Metroparks' valid leasehold interest. Plaintiffs further alleged that Defendants wrongfully destroyed Plaintiffs' personal property. Plaintiffs also apparently sought a judgment that Plaintiffs were the rightful owners to all property under dispute with Defendants in the federal action. (*See* J.A. at 30, "Fifth Count, Quiet Title. . . . Plaintiffs are the owners of and are in possession of and otherwise have and claim a superior title and interest to that of defendants in the real property described [above].") Plaintiffs also sought damages in tort for slander of title.

After filing their Answer, Defendants filed a motion under Federal Rule of Civil Procedure 12(b)(1) with the district court, arguing that the district court either lacked or should decline to exercise jurisdiction over the case because 1) the *Rooker-Feldman* doctrine precluded Plaintiffs' collateral attack on the validity of Metroparks' leasehold interest; 2) those lands allegedly not within the leasehold interest represented a new takings claim for which Plaintiffs had not sought redress through state courts, and the issue was therefore not yet ripe for federal judicial review; and 3) the claims with respect to Wikel Farms (the only Plaintiff not a party to the leasehold litigation) were pending in state court proceedings which antedated the instant federal actions, and therefore *Younger* abstention was merited. The district court agreed, dismissing the case without prejudice on January 24, 2005.

On appeal, Plaintiffs argue that 1) the district court erred in dismissing Plaintiffs' claims, in part, on the basis of the *Rooker-Feldman* doctrine because Plaintiffs are seeking only to enforce the limitation on the scope of Metroparks' leasehold interest as decided in the prior litigation; 2) with respect to lands allegedly not adjudicated as falling under Metroparks' lease, Plaintiffs' takings claim is ripe for review; and 3) the district court erred when it chose to dismiss the claims asserted by Plaintiff Wikel Farms in lieu of holding them in abeyance under *Younger*.

## II.

## ANALYSIS

### A.      Plaintiffs' Do Not Pursue Claims Which Implicate the *Rooker-Feldman* Doctrine

The district court dismissed Plaintiffs' case, in part, because the court found that *Rooker-Feldman* barred federal jurisdiction over some of Plaintiffs' claims. Because we find that Plaintiffs' case as presented to both the district court and this Court does not implicate *Rooker-Feldman*, we hold that *Rooker-Feldman* is inapplicable to Plaintiffs' allegations on appeal. To the extent that the district court decision may have improperly relied on *Rooker-Feldman* as a basis to dismiss Plaintiffs' case, we find such error harmless in light of our conclusion that Plaintiffs' takings claims are not yet ripe for review. This Court can affirm the district court on any grounds supported by the record. *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994).

#### 1.      The Rooker-Feldman *Doctrine Generally*

Plaintiffs argue to this Court that they are not seeking review of the state court decision that adjudicated the validity and extent of Metroparks' leasehold interests. Rather, Plaintiffs allege on appeal that Defendants are misreading the state court decision to give them more property than the decision actually held was rightfully possessed by Defendants. In contrast, Defendants argue that Plaintiffs' instant action is an attempted end-run around the state leasehold decision and contend that *Rooker-Feldman* bars their suit.

*Rooker-Feldman* is a doctrine with only limited application. The doctrine originates from two Supreme Court decisions, which were rendered 60 years apart. *See Rooker v. Fidelity Trust Co.*,

263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases the plaintiffs challenged the validity of state court decisions by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. *Feldman*, 460 U.S. at 478-79. In both cases the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79. Significantly, the *Feldman* Court reasoned that the plaintiffs *could* challenge the *state rules themselves* in federal court on constitutional grounds; such a challenge would not be asking the district court to exercise appellate authority over a state court, but normal preclusion rules would still apply. *Id.* at 487-88; *see also Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-36 (6th Cir 2006) (discussing the Supreme Court's analysis in the *Rooker* and *Feldman* cases more extensively). The source of the plaintiffs' alleged injury, then, was dispositive in *Feldman* on the issue of jurisdiction, a distinction which the Supreme Court reiterated more than 20 years later in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).

After the 1983 *Feldman* decision, the lower federal courts began to invoke the *Rooker-Feldman* doctrine in a variety of circumstances in which the federal and state courts enjoy concurrent jurisdiction. Because of inconsistencies between the circuits, the Supreme Court again explained the doctrine in *Exxon Mobil*, stating that the *Rooker-Feldman* doctrine applied only to:

> cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284. *Exxon Mobil* dealt specifically with a case where there were parallel state and federal cases on the same issue. The court held that normal preclusion jurisprudence, not *Rooker-Feldman*, would guide the federal court decision if the state court reached a decision first. *Id.* In dicta, the Supreme Court also addressed the circumstance where the plaintiff initiated a federal claim after a state court decision, circumstances such as the case at bar:

> Nor does [*Rooker-Feldman*] stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Id.* (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (ellipses in original)).

This Circuit and other circuits have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself. In *Todd*, 434 F.3d at 437, this Court rejected a defendant's argument that *Rooker-Feldman* precluded jurisdiction over a plaintiff's federal suit that complained that the defendant had lied in an affidavit submitted as the basis for a prior state court garnishment proceeding. We reasoned that the plaintiff was alleging injuries from the defendant's deception, and not from the state court judgment itself, which had found that the defendant's affidavit was valid.

*Id.* We further noted that the rules of preclusion would guide the district court on remand regarding whether the plaintiff could properly litigate the affidavit's validity in the federal action. *Id.*

Other circuits have agreed with this Court's approach. *See Davani v. Va. DOT*, 434 F.3d 712, 713 (4th Cir. 2006) ("*Exxon* teaches . . . that the *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Because Davani's suit does not challenge the state court's decision, and it instead seeks redress for an injury allegedly caused by Appellees, the *Rooker-Feldman* doctrine does not apply . . . ."); *Galibois v. Fisher*, No. 05-1576, 2006 U.S. App. LEXIS 8246, at *4 (1st Cir. Mar. 31, 2006) ("*Exxon* requires this court to examine whether the state court loser who files suit in federal court seeks redress for an injury caused by a state court decision itself or an injury caused by the defendant."); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (finding *Rooker-Feldman* implicated only when a plaintiff asked the federal district court to review the validity of a state court judgment). The Tenth Circuit summarized the difference between a suit barred by *Rooker-Feldman* and normal preclusion principles:

> Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.

*Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006).

### 2.        *Plaintiffs' Arguments Below and to This Court*

In response to Defendants' motion to dismiss, in part, under *Rooker-Feldman*, Plaintiffs argued to the district court – and continue to argue to this Court – that their dispute in federal court concerns property *outside* of the land adjudicated by the state courts to fall within Metroparks' leasehold interests. Plaintiffs allege that Defendants are taking property that the state court held was *not* within Metroparks' leasehold interest. Having constrained their case by their own argument, Plaintiffs seek not to throw out a state court judgment, but *to enforce* the judgment, because Defendants are allegedly exceeding the scope of their property interests under the state court decision. This is precisely the type of claim which is not barred by *Rooker-Feldman* because Plaintiffs are not asking the lower federal courts to exercise appellate review over a state court decision. *See* Part II.A.1, *supra*. What Plaintiffs are asking this Court to do is to interpret the state court decision – *i.e.*, decide between Plaintiffs' construction and Defendants' construction of a state court judgment as it pertains to the boundaries of Metroparks' leasehold. Merely requiring a federal court to understand what it is that a state court decided does not implicate *Rooker-Feldman*, but rather normal preclusion principles and rules of construction.

Defendants continue to argue on appeal, however, that *Rooker-Feldman* precludes jurisdiction over Plaintiffs' case. In making this argument, Defendants contend that Plaintiffs' suit is an attempted end-run around the state court decision on the extent of Metroparks' leasehold interest. Whether this is true or not, however, does not make *Rooker-Feldman* more or less applicable. *Rooker-Feldman* applies only when a plaintiff asserts injury from the state court judgment. *See Exxon Mobil*, 544 U.S. at 284. In the instant case, Plaintiffs allege that Defendants

are the ones injuring Plaintiffs; Plaintiffs do not allege that their injury arises from the state court judgment itself or even as a result of the state court judgment. We acknowledge that whether or not Defendants are, in fact, injuring Plaintiffs depends, in part, on the parties' respective property interests. This is an issue which was litigated, at least in part, in the state court leasehold proceedings. Should the federal courts need to reach the merits of Plaintiffs' claims, however, normal preclusion principles would apply to assist us in deciding what has been settled between the parties and what has not been so settled.[1]  *Id.*

## B.      Plaintiffs' Takings Claims Are Not Yet Ripe for Federal Judicial Review

### 1.      *Standard of Review*

Whether this Court has subject-matter jurisdiction is a question of law that this Court reviews *de novo*. *See, e.g.*, *Kruse v. Village of Chagrin Falls*, 74 F.3d 694, 697 (6th Cir. 1996).

### 2.      *The Extent of Metroparks' Valid Leasehold Interest Is Not Dispositive on Appeal*

Plaintiffs allege that the state court language noting that "[t]he only lands owned by the Milan Canal Company at the time the Lease was executed lay within the boundaries of the Kneeland Townsend property and the Ebeneser Merry property" limits Metroparks' leasehold interest to those lands along the canal path which formerly lay within the Townsend and Merry property grants. (J.A. at 123.) Plaintiffs further argue that the evidence before the Ohio courts was that these grants did not create a contiguous tract along the 3 miles of canal to which Defendants now claim a right of possession. Defendants counter, however, by noting the language in the Ohio decision that states "the Leased Property extends from the southern terminus of the old Milan Canal at or near the southerly end of the Milan Canal basin in the Village of Milan to its northerly terminus at the Huron River at the former location of Lock No. 1." (J.A. at 123.) Defendants argue that this language very clearly indicates that Defendants have a valid leasehold interest along the entire length of the canal between the points noted in the state court's decision.

If Defendants are correct, and the property Plaintiffs put at issue in this case was adjudicated as within Metroparks' leasehold interest by the Ohio courts, then *res judicata* would prevent us from reaching a different conclusion than that reached by the Ohio courts on this very same issue, and Plaintiffs' case (with the exception of Wikel Farms) was properly dismissed. If Plaintiffs are correct, however, in their belief that the property at issue here was not adjudicated as within Metroparks' leasehold interest, then Plaintiffs claims' to this Court devolve to new takings allegations. That is, Plaintiffs allege Defendants are unconstitutionally taking Plaintiffs' property by invading lands beyond the scope of Metroparks' leasehold interests. As discussed *infra*, before seeking relief in federal courts, plaintiffs alleging an unconstitutional taking by a local government entity must first seek compensation for the taking through state measures. Because Plaintiffs in the instant action have not done this, Plaintiffs' case is not yet ripe for review.

---

[1]Defendants' *Rooker-Feldman* argument relies on Circuit case law which was handed down prior to the Supreme Court's recent holding in *Exxon Mobil*, which made the boundaries of *Rooker-Feldman* more explicit. *See* Part II.A.1, *supra*. Much of our pre-*Exxon Mobil* case law expanded *Rooker-Feldman* to encompass preclusion and abstention law, an expansion which *Exxon Mobil* makes clear was an incorrect reading of *Rooker-Feldman*. *See, e.g.*, *Peterson Novelties, Inc. v. City of Berkeley*, 305 F.3d 386, 391 (6th Cir. 2002) (incorrectly incorporating preclusion principles as a component of its *Rooker-Feldman* analysis); *Catz v. Chalker*, 142 F.3d 279, 294 (6th Cir. 1998) (reflecting preclusion analysis in its *Rooker-Feldman* discussion). It is preclusion law alone, and not *Rooker-Feldman*, which guides the disposition of federal questions already litigated in state court, when the plaintiff does not attack the actual judgment. *See Exxon Mobil*, 544 U.S. at 284.

3.        *Takings Claims in Federal Courts*

a.        *The Supreme Court requires claimants to pursue any "reasonable, certain, and adequate procedures" in state court prior to seeking federal judicial review*

The Takings Clause does not prohibit the government from taking private property; it prohibits the government from taking private property without just compensation. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). A takings claim is not ripe for review unless a property owner is denied just compensation. *Id.* ("Because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied."); *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville & Davidson County*, 130 F.3d 731, 739 (6th Cir.1997); *Hammond v. Baldwin*, 866 F.2d 172, 178-79 (6th Cir. 1989); *Four Seasons Apartment v. City of Mayfield Heights*, 775 F.2d 150, 151-52 (6th Cir. 1985); *see also Eide v. Sarasota County*, 908 F.2d 716, 721 (11th Cir. 1990) ("[A] Fifth Amendment just compensation claim is not ripe until the landowner has pursued the available state procedures to obtain just compensation."). Under this reasoning, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. at 195. In other words, a wronged party satisfies its duty to seek just compensation by pursuing "reasonable, certain, and adequate procedures" for obtaining compensation. *Id.* at 194 (quoting *Reg'l Rail Reorganizational Act Cases*, 419 U.S. 102, 124-25 (1974)).

b.        *Ohio now has a "reasonable, certain, and adequate procedure" for takings claimants to pursue in Ohio state courts*

Ohio does not have an inverse condemnation or other direct, statutory cause of action for plaintiffs seeking just compensation for a taking. Rather, Ohio law provides a statutory mechanism by which the government actor seeking to take property is under a duty to bring an appropriation proceeding against the landowner. *See* Ohio Rev. Code §§ 163.01-163.62; *Shemo v. City of Mayfield Heights*, 765 N.E.2d 345, 350 (Ohio 2002). A property owner who believes that his property has been taken in the absence of such an appropriation proceeding may initiate a mandamus action in Ohio court to force the government actor into the correct appropriation proceeding.[2] *Id.* This Circuit has therefore focused on whether Ohio's writ of mandamus provides a "reasonable, certain, and adequate provision for obtaining compensation" pursuant to Supreme Court direction.

This Circuit first addressed this issue in *Silver v. Franklin Township*, 966 F.2d 1031 (6th Cir. 1992). The *Silver* Court was presented with a regulatory takings claim and found Ohio's writ of mandamus procedure to be an adequate mechanism for pursuing just compensation. *Id.* at 1035. Just four years later, however, this Court appeared to reason differently in *Kruse,* a physical takings case:

We hold that Ohio affords no "reasonable, certain and adequate provision for obtaining compensation" after private property is taken by public authorities without following the mandatory pretaking appropriation procedures set out in Ohio Rev. Code §§ 163.01-163.62. Ohio's decisional law in this area is anything but certain.

---

[2]Mandamus is defined as "[a] writ issued by a superior court to compel a lower court or a government officer to perform mandatory or purely ministerial duties correctly." *Black's Law Dictionary* 973 (7th ed. 1999). Ohio further defines mandamus in Ohio Revised Code § 2737.01 as "a writ, issued in the name of the state to an inferior tribunal, a corporation, a board, or person, commanding the performance of an action which the law specially enjoins as a duty resulting from an office, trust, or station."

Ohio has no statutory provision for relief under the circumstances of this case. The fact that the State's courts recognize an action in mandamus, where the State has no mandated procedures governing inverse condemnation, cannot be equated to a "reasonable, certain and adequate provision for obtaining compensation," after the property has been physically taken in violation of the appropriations statutes. An action for the extraordinary writ of mandamus is, at best, a procedure which must be invoked in the absence of any statutory framework in an attempt to obtain wholly equitable relief for an injury already inflicted.

74 F.3d at 700.

Although the *Silver* and *Kruse* holdings appear contradictory, subsequent panels of this Court have reconciled the cases by limiting each to its facts. This approach applies the rule in *Silver* to regulatory takings claims, but applies the *Kruse* rule to physical takings claims. *See Buckles v. Columbus Mun. Airport Auth.*, 90 Fed. App'x 927, 929-30 (6th Cir. Feb. 23, 2004); *Tri Corp Mgmt. Co. v. Praznik*, 33 Fed. App'x 742, 749 (6th Cir. Mar. 29, 2002). The *Buckles* decision noted further language in the *Kruse* decision in support of the view that physical takings implicate different procedures:

> *Kruse* did not discuss *Silver*, but it did distinguish regulatory from physical takings in arriving at its holding, and this distinction reconciles the two cases:
>
>> In regulatory cases, where the government has fulfilled its obligation to provide notice to the property owner, it may be fair to place the burden of making the next move on the landowner. It may make sense to require landowners to pursue relief through administrative appeals and the mandatory injunction process when the landowners know in advance that the government is planning action that threatens their ownership of their property . . . since there are generally numerous opportunities available to landowners to be heard and to attempt to prevent a proposed zoning ordinance from taking effect, or to reach a compromise with the authorities that permits some alternative use of the land.
>
> [*Kruse*, 74 F.3d at 700.] In contrast, where the landowner simply one day finds his land physically invaded and his title transferred against his will, and yet the government refuses to pay up despite explicit requests, he need not go through Dickensian formalities to confirm the government's obvious intentions.

*Buckles*, 90 Fed. App'x at 929-30.

Additional language in the *Kruse* decision sheds further light on why the *Kruse* panel found the Ohio mandamus action to be an inadequate remedy for physical takings at the time:

> The Ohio Supreme Court has very recently stated that a landowner who has been deprived of his property may bring an action in mandamus to require the government to institute appropriation proceedings pursuant to Ohio's Appropriation of Property statute. *See Levin v. City of Sheffield Lake. . .* 637 N.E.2d 319, 323-24 (Ohio 1994). There, the court reviewed some of its prior decisions, which indicated that appropriation proceedings may be compelled through mandamus, but also reiterated the stringent requirements for issuance of the extraordinary writ and explained that prior to issuance of the writ to compel the commencement of appropriation proceedings, the issue of whether the petitioner's property had been appropriated had first to be determined by the court in which the writ was requested. *Id.*

*Levin*, however, was not decided until 1994, well after the Kruses had begun their heretofore fruitless attempt to obtain compensation from the Village for its taking of their property. And *Levin*'s cited cases which have held that mandamus is the vehicle for compelling appropriation proceedings by public authorities, are all cases in which the court addressed a taking by the state, through the action of the Director of Highways.

. . . .

The *Levin* court did not address at all its decision in *City of Worthington v. Carskadon*, . . . 249 N.E.2d 38 (Ohio 1969), a case which post-dates all of the decisions *Levin* relied upon, in which the City of Worthington took possession of property pursuant to a "quick take ordinance," prior to determination of value by a jury. There, the court held that "the proper remedies for illegal entry upon one's property are criminal trespass and civil damages against the individuals entering, and injunction against the city and its agents." 249 N.E.2d at 39.

None of these cases even mentions the remedy of inverse condemnation. The claim by the Village that *Solly v. City of Toledo*, . . . 218 N.E.2d 463 (Ohio 1966) holds that Ohio has such a remedy is simply incorrect.

*Kruse*, 74 F.3d at 698-99.

The *Kruse* panel, therefore, placed considerable emphasis on the apparent uncertainty in the Ohio case law on the appropriateness of a mandamus action when a physical taking by a local government entity is alleged. Today, ten years after the *Kruse* decision, this uncertainty has all but disappeared, as the Ohio courts have accepted a mandamus action as the appropriate approach for a plaintiff alleging a taking without just compensation. The use of the writ of mandamus in such circumstances has been affirmed by the Ohio Supreme Court at least six times since 1996. Moreover, the Ohio intermediate appellate courts routinely accept mandamus actions from plaintiffs alleging a local government actor has unconstitutionally taken their property.[3]

In *BSW Development Group v. City of Dayton*, 699 N.E.2d 1271 (Ohio 1998), the Ohio Supreme Court stated that "[m]andamus is the appropriate vehicle for compelling appropriation proceedings by public authorities where an involuntary taking of private property is alleged." *Id.* at 1274. While a regulatory taking was alleged in *BSW*, three years later the Ohio Supreme Court reaffirmed the correctness of the mandamus action for an alleged physical taking in *Sekermestrovich v. City of Akron*, 740 N.E.2d 252, 254-55 (Ohio 2001). Later that same year, the Ohio Supreme Court overturned an Ohio court of appeals' decision and granted a writ of mandamus to force appropriation proceedings in a case where the plaintiffs alleged a physical taking of their property.

---

[3] A prior panel of this Court has already noted the changed circumstances in Ohio. The *Tri Corp* panel noted:

Complicating matters further, we note that a recent Ohio Supreme Court decision may shed additional light on whether the writ of mandamus in Ohio is a "reasonable, certain, and adequate provision for obtaining compensation" for an unconstitutional taking. *In State ex rel. Elsass v. Shelby County Board of Commissioners*, the Ohio Supreme Court explained that "mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." . . . 751 N.E.2d 1032, 1037 (Ohio 2001). Although that decision suggests that Ohio now recognizes the writ of mandamus as a "reasonable, certain, and adequate provision for obtaining compensation" after an unconstitutional taking has occurred, we do not go so far as to reach that result.

*Tri Corp Mgmt. Co.*, 33 Fed. App'x at 749-50.

*See Elsass v. Shelby County Bd. of Comm'rs*, 751 N.E.2d 1032, 1039 (Ohio 2001).  The Ohio Supreme Court has since addressed a physical and at least two regulatory takings cases, and in all these cases the court affirmed the use of the writ of mandamus by plaintiffs seeking compensation for local government takings.  *See Duncan v. City of Mentor City Council*, 826 N.E.2d 832 (Ohio 2005) (regulatory taking); *Preschool Dev. Ltd. v. City of Springboro,* 792 N.E.2d 721 (Ohio 2003) (physical taking); *Shemo*, 765 N.E.2d at 345 (regulatory taking).

At a minimum, since the *BSW Development* case in 1998, Ohio intermediate appellate courts have consistently recognized the writ of mandamus as the appropriate vehicle with which to challenge an involuntary taking by a local or state government agent*. See, e.g., Howland Twp. Bd. of Trs. v. Casale*, No. 98-T-0179, 1999 Ohio App. LEXIS 4669 (Ohio Ct. App. Sept. 30, 1999) (regulatory taking); *Hardale Inv. Co. v. Ohio Dep't of Natural Res.*, No. 98-BA-40, 2000 Ohio App. LEXIS 1769 (Ohio Ct. App. Apr. 14, 2000) (enforcing trial court's issuance of writ of mandamus for physical taking); *Cincinnati Entm't Assoc. v. Bd. of Comm'rs of Hamilton County*, 753 N.E.2d 884 (Ohio Ct. Ap. 2001) (enforcing trial court's issuance of writ of mandamus for physical taking); *Hunt v. Washington Twp.*, 2001 Ohio 1734 (Ohio Ct. App. 2001) (refusing to hear takings claim when plaintiffs had failed to request mandamus); *Proctor v. Huck*, 2004 Ohio 7281 (Ohio Ct. App. 2004) (refusing to address takings claims when plaintiffs had failed to request mandamus); *Craig v. Luebbe*, 2004 Ohio 6933 (Ohio Ct. App. 2004) (requiring trial court to address plaintiffs' takings claims when plaintiffs had properly requested mandamus).

We further note that Ohio's mandamus action is not entirely a creature of the common law. Ohio has a statutory provision that requires public officials to bring an appropriation action prior to taking any private property.  Ohio Rev. Code §§ 163.01-163.62.  This statute creates obligations for public officials and not a direct cause of action for citizens.  However, mandamus allows property owners to usurp section 163 for their own benefit, and this ability to compel an official into an appropriation action is buttressed by Ohio's incorporation of the mandamus action into its statutory structure.  Ohio Revised Code § 2737.01 defines "mandamus" as "a writ, issued in the name of the state to an inferior tribunal, a corporation, a board, or person, commanding the performance of an action which the law specially enjoins as a duty resulting from an office, trust, or station."  The code further provides that "[a]pplication for the writ of mandamus must be by petition, in the name of the state on the relation of the person applying, and verified by affidavit."  Ohio Rev. Code § 2737.04. Because Ohio government officials are required by statute to bring appropriation proceedings whenever a taking occurs, this is such a "duty" which can be compelled by mandamus.  The mandamus action and its relationship to appropriations proceedings is therefore reflected in Ohio's statutory scheme, albeit in a more general fashion than as a direct, statutory cause of action for private parties.

The very frequency of mandamus actions as a means to force appropriation proceedings in Ohio today, as opposed to the mid-1990s, significantly distinguishes the instant case from the 1996 *Kruse* case.  The Court  also notes that the *Kruse* panel emphasized that the 1994 *Levin* decision from the Ohio Supreme Court, which was the genesis of the modern recognition of the mandamus action to force appropriation proceedings, had not yet been handed down when the *Kruse* plaintiffs began their efforts to achieve compensation. 74 F.3d at 700 ("*Levin*, however, was not decided until 1994, well after the Kruses had begun their heretofore fruitless attempt to obtain compensation from the Village for its taking of their property.")  In the instant case, Plaintiffs began their action in 2003, well after the Ohio Supreme Court and lower courts had issued numerous opinions emphasizing mandamus as the proper action to force appropriations proceedings against local government officials.  Finally, the *Kruse* panel was concerned that "*Levin*'s cited cases which have held that mandamus is the vehicle for compelling appropriation proceedings by public authorities, are all cases in which the court addressed a taking by the state, through the action of the Director of Highways."  *Id.*  Intervening case law has made it clear and "certain" that mandamus is appropriate when the taking is done by local, as opposed to state, entities.

Today, Ohio has "reasonable, certain, and adequate procedures" for plaintiffs to pursue compensation for an involuntary taking. Significant factors distinguish the certainty of Ohio measures as analyzed today from those assessed by the *Kruse* panel in 1996. Over the last ten years Ohio courts, including the Ohio Supreme Court, have consistently recognized mandamus as the vehicle with which to contest an involuntary taking, no matter whether that taking is a regulatory or a physical one, and no matter whether the public actor is a state or local entity. Because the Supreme Court's direction in *Williamson* requires us to assess the adequacy of state measures, these differences in the state of Ohio decisional law require this Court to reach a different conclusion today than that reached by the *Kruse* panel ten years ago.

### 4.       *Plaintiffs Have Failed to Request Mandamus, and Therefore the Case Is Not Ripe*

In the instant case, there is no dispute that Plaintiffs have failed to request mandamus from the state. Their case is therefore not yet ripe for review; the district court was correct in finding that the federal courts lack jurisdiction to hear Plaintiffs' takings claims at this time.

## C.       The District Court Did Not Abuse Its Discretion in Dismissing Wikel Farms' Claim Without Prejudice in Lieu of Holding the Claim in Abeyance After Deciding to Abstain Under the *Younger* Doctrine

### 1.       *Standard of Review*

This Court reviews a district court's decision to dismiss a case without prejudice after a decision to abstain under *Younger* for an abuse of discretion. *See Carroll v. Mt. Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).

### 2.       Younger *Abstention Generally*

Plaintiff Wikel Farms does not dispute that *Younger* abstention properly applies in this case. *Younger* abstention applies when the state proceeding 1) is currently pending, 2) involves an important state interest, and 3) affords the plaintiff an adequate opportunity to raise constitutional claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Although *Younger* arose in the context of a state criminal proceeding, the Supreme Court has extended its principles to civil enforcement actions, such as the state proceeding here. *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977).

*Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice. When a person is the target of an ongoing state action involving important state interests, a party cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. If the state party files such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy.").

Wikel Farms argues that the district court improperly dismissed his case without prejudice instead of properly holding the case in abeyance pending the conclusion of the state court proceedings. A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance. *See Carroll*, 139 F.3d at 1075. In exercising this discretion, a district court should look to the nature of the state proceedings and consider whether a litigant will be able to address his federal claim on the merits in the state court proceeding. *Id.* The court should also consider whether there are any statute of limitations issues should the case be dismissed and the limitations clock continue to run. *Id.*

### 3.        *Wikel Farms' Case Is Not Yet Ripe*

Pursuant to the analysis, Part II.A, *supra*, Wikel Farms' allegation of an unconstitutional taking without just compensation is not yet ripe for federal review. Wikel Farms is currently involved in appropriation proceedings with Defendants in state court. Wikel Farms has not yet been denied compensation and therefore has no injury necessary to make his case ripe for federal review. On this basis alone, the district court's dismissal without prejudice, in lieu of abstention, was not an abuse of discretion.

### 4.        *The Statute of Limitations Has Not Yet Begun to Run*

Wikel Farms cites to *Carroll* and *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) for the proposition that the "the appropriate procedure, when abstaining under *Younger*, is to stay proceedings rather than to dismiss the case without prejudice," *id.* Yet both these cases were primarily concerned with a running of the statute of limitations. In the instant case, Wikel Farms' alleged injury has not yet occurred; the company has not yet been denied compensation. A statute of limitations does not begin to run until a cause of action has accrued, and Wikel Farms' cause of action has not yet accrued. A dismissal bears no risk relative to the statute of limitations running during the state court proceedings. Therefore, it was not an abuse of discretion for the district court to dismiss Wikel Farms' claims without prejudice once it made the decision to abstain.

## III.

## CONCLUSION

Plaintiffs' causes of action for unconstitutional takings are not yet ripe for federal review. In addition, the district court did not abuse its discretion in dismissing without prejudice the case as brought by Plaintiff Wikel Farms in lieu of holding the case in abeyance. For the foregoing reasons, we **AFFIRM** the district court's dismissal of the case.